J-S26038-17

2018 PA Super 44

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :           PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
                                :
JEFFREY ALLEN KEHR, II          :
                                :
            Appellant           :    No. 1611 MDA 2016

Appeal from the Judgment of Sentence June 21, 2016
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001875-2016

BEFORE:   BOWES, J., DUBOW, J., and FITZGERALD*, J.

OPINION BY BOWES, J.:                    **FILED FEBRUARY 28, 2018**

Jeffrey Allen Kehr, II appeals from the judgment of sentence imposed following his conviction for one count of DUI. Appellant asserts that the trial court erred in denying his timely post-sentence motion to withdraw his guilty plea to enable him to take advantage of the United States Supreme Court decision **North Dakota v. Birchfield**, 136 S. Ct. 2160 (2016). We affirm.

The facts are simple. On February 5, 2016, Pennsylvania State Police Trooper Richard Daldo suspected Appellant of driving under the influence during a routine traffic stop. Appellant consented to a blood draw, and was subsequently charged with various DUI crimes. On June 20, 2016, he entered into a negotiated guilty plea, and, the following day, was sentenced to six months intermediate punishment. He did not file a motion seeking suppression of the blood.

_____

* Former Justice specially assigned to the Superior Court.

On June 23, 2016, the United States Supreme Court issued **Birchfield**, which held that warrantless blood tests cannot be justified under the search incident to arrest rationale, and, as a result, a driver may not be informed they are subject to increased punishment in the event of refusal. **See Commonwealth v. Ennels**, 167 A.3d 716, 724 (Pa.Super. 2017) ("**Birchfield** makes plain that the police may not **threaten** enhanced punishment for refusing a blood test in order to obtain consent[.]") (emphasis in original).

On June 29, 2016, trial counsel filed a post-sentence motion seeking withdrawal of the plea based on a desire to pursue a suppression motion pursuant to **Birchfield**. The trial court held a hearing and thereafter denied the motion. Appellant filed a timely appeal, presenting the following issue for our consideration:

> The trial court erred when it denied Appellant's Post–Sentence Motion to Withdraw Plea . . . denying his request constitutes a manifest injustice because the evidence against him was obtained in violation of the 4th Amendment of the United States Constitution, and . . . the **Birchfield** decision makes Appellant's plea unknowing and involuntary under the circumstances.

Appellant's brief at 4.

We begin by setting forth our standard of review. In **Commonwealth v. Broaden**, 980 A.d 124 (Pa.Super. 2009), we summarized the principles governing post-sentence motions to withdraw pleas:

> [P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that

- 2 -

manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. A deficient plea does not *per se* establish prejudice on the order of manifest injustice.

*Id*. at 129 (citations omitted). "It is well-settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court." ***Commonwealth v. Hart***, 174 A.3d 660, 664 (Pa.Super. 2017) (applying abuse of discretion in post-sentencing context). The term discretion

imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judges. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary action. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Shaffer***, 712 A.2d 749, 751 (Pa. 1998) (citation omitted).

We begin by examining the trial court's rationale for denying the motion.

In the present case, the plea was entered into voluntarily and knowingly. A full and complete colloquy was conducted that included the six mandatory inquiries set out by the Supreme Court, and is included as a part of this record. Defendant was aware of the nature of the offense and possible range of sentences when he entered into a negotiated plea bargain.

- 3 -

Instead of litigating the numerous pre-trial issues, including the legality of the stop and arrest and the legality of the blood draw and test results, then going to trial, Defendant chose instead to accept the plea agreement the Commonwealth offered, for a certain, known resolution of the case.

Trial Court Opinion, 1/11/17, at 6. Appellant attacks this conclusion by asserting that his plea was involuntary due to a subsequent change in the law.

In this instance, once the U.S. Supreme Court issued **Birchfield**, a non-final judgment of sentence based on a plea due to an invalid consent to a blood draw became unknowing and involuntary. First, the charge to which Appellant plead[ed] was no longer a possibility given the illegality of blood evidence obtained based on invalid consents.

. . . .

Second, because of **Birchfield**, Appellant no longer knew the permissible range of sentences in order to make an informed decision of whether to enter a plea or elect his constitutionally protected right to a trial. . . . It defies reality to think that if Kehr's plea hearing had been scheduled for June 24, 2016 that he would not have entered a plea to the Tier I general impairment subsection rather than Tier III combined alcohol/drug subsection.

Appellant's brief at 10-11.

Thus, Appellant assumes, with little discussion, that there is "sufficient cause" on the order of "manifest injustice" inherent in a change of law, such that a trial court is **required** to grant a post-sentence motion seeking to undo a guilty plea. We disagree.

Preliminary, we do not accept Appellant's fundamental position that his plea on June 20, 2016, retroactively became unknowing and involuntary due

- 4 -

to **Birchfield**. The question is whether his plea **was** knowing and voluntary, an inquiry that must be examined in light of what was known and said on that day.[1] That point is demonstrated by the unremarkable observation that **Birchfield** could have been decided in a manner unfavorable to criminal defendants. **See Birchfield**, **supra** at 2198 ("The better (and far simpler) way to resolve these cases is by applying the *per se* rule that . . . both warrantless breath and blood tests are constitutional.") (Thomas, J., concurring and dissenting). According to Appellant, his plea would have been voluntary if Justice Thomas's view had prevailed, yet somehow became involuntary when the majority ruled as it did in **Birchfield**. That approach is untenable.

Such an argument also ignores the settled principle that a change in law applies only to cases where the issue was properly preserved. We note that following submission of the briefs in these cases, we decided **Commonwealth v. Moyer**, 171 A.3d 849 (Pa.Super. 2017), which dealt with a similar issue. Therein, Moyer proceeded to trial on, *inter alia*, DUI charges. Like Appellant, Moyer did not file a suppression motion challenging the admissibility of the evidence derived from a blood draw. Following trial, Moyer was sentenced on June 21, 2016, and, on July 13, 2016, filed an

_____

[1] As an absurd example, no one would suggest that a defendant's decision to reject a plea offer in favor of a jury trial "became" involuntary once the defendant lost and received a harsher sentence than offered by the plea.

- 5 -

untimely post-sentence motion "asking the trial court to vacate her DUI conviction under **Birchfield**." **Id**. at 852. The motion validly tolled the appeal period. **Id**. (citing **Commonwealth v. Dreves**, 839 A.2d 1122 (Pa.Super. 2003) (*en banc*)). We held that the trial court did not err in denying the motion:

> Next, Appellant argues that the trial court erred in declining to vacate her DUI conviction under **Birchfield**. As explained above, the United States Supreme Court handed down **Birchfield** two days after Appellant's sentence. Appellant never challenged the warrantless blood draw during trial, and did not raise any issue under **Birchfield** until her *nunc pro tunc* post-sentence motion. In Pennsylvania, it has long been the rule that criminal defendants are not entitled to retroactive application of a new constitutional rule unless they raise and preserve the issue during trial. **Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*), **appeal denied**, 632 Pa. 693, 121 A.3d 496 (2014). The **Newman** Court relied on **Commonwealth v. Cabeza**, 503 Pa. 228, 469 A.2d 146, 148 (1983). There, the Supreme Court wrote:
>
> > [W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved **at all stages of adjudication** up to and including any direct appeal.
>
> **Id**. (emphasis added). Instantly, Appellant failed to challenge the warrantless blood draw at any stage of the litigation prior to her *nunc pro tunc* post-sentence motion. Thus, she is not entitled to retroactive application of **Birchfield**.
>
> Appellant argues that she should not have been required to anticipate the United States Supreme Court's **Birchfield** opinion. The same could be said, however, in nearly every case in which a defendant is denied retroactive application of a new constitutional principle. The rule permitting retroactive application was created for the benefit of defendants who raised

- 6 -

and preserved the issue in question and in whose case the issue remained pending while a higher court decided the issue in a similar case.

*Id*. at 854–55.

***Moyer*** does not directly control, as that case concerned a post-sentence motion seeking to vacate the **conviction**, whereas here Appellant seeks to undo his plea. In the former context, the necessity of filing a suppression motion is clear, as the question on appeal would be whether the suppression court correctly applied the law regarding the admissibility of the blood evidence. ***Compare Commonwealth v. Evans***, 153 A.3d 323 (Pa. Super. 2016) (remanding for evaluation of the validity of the defendant's consent). Nevertheless, the logic employed in ***Moyer*** mandates the same outcome.

Returning to Appellant's argument, it is beyond question that ***Birchfield*** represented a clear change in the law. Where Appellant's argument fails is in explaining why a favorable change in the law constitutes "manifest injustice" such that the defendant must be given an opportunity to, in effect, manufacture retroactive application of a new rule. As we noted in ***Moyer***, the "rule permitting retroactive application was created for the benefit of defendants who raised and preserved the issue in question and in whose case the issue remained pending while a higher court decided the issue in a similar case." ***Moyer***, ***supra*** at 855. Simply put, there is little distinction between defendants in Appellant's position and defendants whose

cases were already on appeal when **Birchfield** was announced. Clearly, the latter class of individuals are not entitled to retroactive application of **Birchfield**.[2]

Speaking to this point, we firmly disagree with Appellant's claim that he could not have raised the **Birchfield** issue until the case was decided:

> Trial counsel raised the **Birchfield** issue at the earliest possible time i[t] could have been raised. . . . The **Birchfield** decision first impacted Kehr's case within the deadline to file a post-sentence motion to withdraw his plea, and before Appellant's Judgment of Sentence became final. This was the earliest this issue could have been raised by trial counsel.

Appellant's brief at 12. That assertion is objectively incorrect. Appellant could have pursued his suppression issue even if **Birchfield** was not then-pending.[3]

_____

[2] Similarly, while **Birchfield** issues may raise a question regarding the legality of sentence, that principle applies only if the defendant received an increased punishment due to a refusal. **See Commonwealth v. Giron**, 155 A.3d 635, 639 (Pa.Super. 2017) ("Accordingly, we must determine if Appellant received criminal penalties for his refusal to submit to a warrantless blood test. If he did, his sentence was illegal.") (footnote omitted). In this case, where Appellant did not refuse and did not seek suppression of the blood evidence, there is no illegality to correct.

Furthermore, assuming _arguendo_ that **Birchfield** rendered Appellant's consent involuntary, then the blood evidence must be suppressed and we would be required to grant a new trial, not modify his sentence. Whatever the contours of the illegality of sentence construct, it limits this Court to correcting defects regarding sentences, not convictions.

[3] The Supreme Court of the United States had occasion to decide **Birchfield** because the attorneys in the consolidated cases preserved and pursued the issues. Surely, pre-**Birchfield**, an attorney might think that the probability
_(Footnote Continued Next Page)_

More importantly, Appellant overlooks the role of trial counsel in this situation. In truth, Appellant sought to undo his guilty plea on a theory of ineffective assistance of counsel; to wit, counsel ineffectively advised entry of the pleas due to the forthcoming, and potentially favorable, ***Birchfield*** decision. That claim fails to account for the fact that Appellant can confidently assert that he should have filed a ***Birchfield*** motion only through the lens of hindsight. Had the case come out the other way, there is no doubt that Appellant would happily keep his plea on the books.

At the end of the day, Appellant's real complaint is that his counsel ineffectively advised that he accept the plea due to the possibility of a favorable outcome in the then-pending ***Birchfield*** decision.[4] However, as we explained in ***Commonwealth v. Hickman***, 799 A.2d 136 (Pa.Super. 2002), an attempt to establish that a plea was unknowing or involuntary due to deficient legal advice sounds in ineffectiveness.

> A criminal defendant has the right to effective counsel during a plea process as well as during a trial. ***Hill v. Lockhart***, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. ***Commonwealth v. Allen***, 557 Pa. 135, 732 A.2d 582 (1999).

_(Footnote Continued)_ _____

of succeeding on such a motion was quite low, but that point speaks to the generic issue of retroactive application of new law. It has nothing to do with whether or not Appellant could have made the claim.

[4] There is a further problem with the instant motion: Trial counsel could not assert his own ineffectiveness.

> Where the defendant enters his plea on the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill,* 474 U.S. at 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

*Id*. at 141.

Appellant's claim is indistinguishable from an allegation that his plea was involuntarily entered due to the ineffective assistance of plea counsel. Therefore, the trial court correctly held that the plea was not involuntary or unknowing, as Appellant freely gave up his opportunity to file a suppression motion in exchange for the negotiated guilty plea. The question of whether that choice was knowing and voluntary in light of counsel's advice is a question that must be raised *via* an ineffective assistance of counsel claim.

In this regard, we note that in **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), our Supreme Court reiterated its preference that claims pertaining to ineffectiveness be deferred to PCRA review. "By way of summary, we hold that [the] general rule of deferral to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel; we disapprove of expansions of the exception to that rule[.]" *Id*. at 563.

This stated preference poses an impediment to the trial court's ability to entertain the instant motions to withdraw the pleas, and, concomitantly, our ability to review those decisions on direct review. Furthermore, Appellant urges the adoption of a *per se* rule, whereby a trial court is

required to permit a defendant to withdraw a plea post-sentencing on the basis of a change of law. The effect of such a rule would permit a defendant to withdraw his guilty plea without establishing ineffectiveness of counsel as described in **Hickman**, **supra**.

Such a proposed rule means that criminal defendants may always benefit from **favorable** changes in the law while completely avoiding unfavorable outcomes. Appellant accepted his plea prior to **Birchfield**; generally speaking, the possibility that circumstances might change after the negotiation concluded is a risk that accompanies any bargain. Had Appellant sought suppression from the start and lost, he may have ended up with a worse sentence than offered by the plea if the United States Supreme Court had ultimately decided **Birchfield** in an unfavorable manner. The mitigation of risk through foregoing suppression motions is part and parcel of the plea process.[5] **See United States v. Johnson**, 410 F.3d 137, 153 (4th Cir. 2005) ("A plea agreement, like any contract, allocates risk. And the possibility of a favorable change in the law occurring after a plea is one of

_____

[5] It is only with the benefit of hindsight that we can say counsel erred in failing to raise and litigate the **Birchfield** issue. Suppose that counsel had advised Appellant to challenge the evidence by guaranteeing that **Birchfield** would result in a favorable ruling, but Justice Thomas's view prevailed. Is there any doubt that we would say counsel was ineffective for **promising** a change in the law?

the normal risks that accompanies a guilty plea.") (cleaned up).[6]  We agree with that proposition.  Accordingly, the trial court did not abuse its discretion in declining to permit a post-sentence withdrawal of guilty pleas on the basis of a change in law.

Judgment of sentence affirmed.

Justice Fitzgerald did not participate in the consideration or decision of this case.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/28/18

---

[6] "Cleaned up" is a new parenthetical designed to "tell readers that they have removed extraneous material for readability and guarantee that nothing removed was important."  **See** Metzler, Jack, Cleaning Up Quotations (March 17, 2017). Journal of Appellate Practice and Process, 2018, Forthcoming. Available at http://dx.doi.org/10.2139/ssrn.2935374.