J-A12018-18

2019 PA Super 53

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DAVID SANTANA, :
:
Appellant : No. 3488 EDA 2017

Appeal from the Judgment of Sentence July 18, 2017
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000031-2017

BEFORE: BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

OPINION BY OTT, J.: **FILED FEBRUARY 22, 2019**

David Santana appeals from the judgment of sentence imposed July 18, 2017, in the Monroe County Court of Common Pleas. The trial court sentenced Santana to a term of 33 to 66 months' imprisonment following his guilty plea to one count of failure to comply with the registration requirements[1] of Pennsylvania's Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.42. On appeal, Santana contends the trial court erred or abused its discretion when it rejected his claim that application of SORNA's registration provisions to his conviction violates the *ex post facto* clauses in the United States and Pennsylvania Constitutions. For the reasons below, we affirm.

The facts and procedural history underlying Santana's guilty plea are as follows. In 1983, Santana was convicted of rape in the state of New York. He

_____

[1] 18 Pa.C.S. § 4915.1(a)(1).

was sentenced to a term of three to nine years' imprisonment, followed by a period of supervision, with a maximum release date of March 26, 2004. On January 26, 1996, New York enacted the Sex Offender Registration Act ("SORA"). *See* N.Y. Correct. Law § 168 *et al*. Pursuant to that statute, Santana was required to register as a sex offender in the state of New York for the duration of his lifetime. His registration requirements under SORA were substantially the same as the requirements for a lifetime offender under Pennsylvania's statute, SORNA. The only noted difference is Pennsylvania's SORNA requires a registrant to report any changes in his address, phone number or internet identifiers within three business days, while New York's SORA requires a defendant to report such changes within 10 calendar days. *See* Trial Court Opinion, 10/17/2017, at 2.

In November of 2015, Santana moved to the Commonwealth of Pennsylvania, and preliminarily, complied with the registration requirements of SORNA. The trial court detailed the events leading to instant charges as follows:

> On September 4, 2016, Pennsylvania State Police [(PSP)] were conducting routine verification checks on local sex offenders and noticed a discrepancy regarding internet identifiers listed for [Santana]. Further investigation revealed that [Santana] had reported to the PSP Fern Ridge barracks on six (6) occasions since November 2015, but had never reported any internet identifiers to the PSP. Investigators tried to contact [Santana] on his registered phone number but were unable to reach him and he did not return the phone calls. PSP received a search warrant for identifying information associated with [Santana's] alleged Facebook account, which revealed several indicators that the account belonged to [him] including a registered email address

and phone number, as well as a second phone number that was registered with PSP.  On November 7, 2016, [Santana] was not interviewed by PSP and it was determined that he had failed to report in a timely manner the following:  a termination in phone number; an addition of another phone number; the commencement of employment; and the use of two internet identifiers.

*Id.* at 2-3.

On May 2, 2017, Santana entered a guilty plea to one count of failure to comply with SORNA's registration requirements,[2] and was sentenced on July 18, 2017, to a term of 33 to 66 months' imprisonment.  The next day, the Pennsylvania Supreme Court issued its opinion in ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017), *cert. denied*, 138 S.Ct. 925 (2018), which held the registration requirements under SORNA are punitive in nature, and therefore, the retroactive application of SORNA's registration provisions violates the *ex post facto* clause of the Pennsylvania Constitution.[3]  ***Id.*** at

---

[2] ***See*** 18 Pa.C.S. § 4915.1.

[3] ***Muniz*** was a plurality decision.  Justice Dougherty authored the Opinion Announcing the Judgment of the Court ("OAJC"), holding:  (1) SORNA's registration requirements constitute punishment; (2) the retroactive application of the registration requirements violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions; and (3) Pennsylvania's *ex post facto* clause provides greater protection than its federal counterpart. ***See Muniz***, 164 A.3d at 1193, 1223.  Justices Baer and Donahue joined the OAJC in full.  Justice Wecht filed a Concurring Opinion, joined by Justice Todd, which joined those parts of the OAJC concluding the registration requirements constitute punishment, and their retroactive application runs afoul of Pennsylvania's *ex post facto* clause.  However, he disagreed with the OAJC's holding that the Pennsylvania Constitution provides greater protection than the federal constitution, and, additionally, stated he would decline to address the federal claim.  ***See id.*** at 1224.  Justice Saylor authored a Dissenting

- 3 -

1218. That same day, Santana filed a post-sentence motion seeking to withdraw his guilty plea based upon the holding in *Muniz*. The trial court conducted a hearing on July 26, 2017, and ultimately denied the motion on October 17, 2017. This timely appeal follows.[4]

Santana's sole claim on appeal is the trial court erred or abused its discretion when it denied his post-trial motion to withdraw his guilty plea. Specifically, he argues his conviction and sentence are illegal because application of the registration requirements of SORNA to his foreign rape conviction constitutes a violation of the *ex post facto* clause in both the United States and Pennsylvania Constitutions.

Our review of a post-sentence motion to withdraw a guilty plea is well-established:

> [P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. A deficient plea does not per se establish prejudice on the order of manifest injustice.

---

Opinion in which he concluded SORNA is not punitive. Justice Mundy did not participate in the decision.

[4] On October 23, 2018, the trial court ordered Santana to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Santana complied with the court's directive, and filed a concise statement on November 13, 2017.

- 4 -

"It is well-settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court."

***Commonwealth v. Kehr***, 180 A.3d 754, 756–757 (Pa. Super. 2018) (internal citations omitted).

In the present case, Santana pled guilty to one count of failure to comply with the registration requirements of SORNA. ***See*** 18 Pa.C.S. § 4915.1(a). The statute provides, in relevant part:

> **(a) Offense defined.--**An individual who is subject to registration under 42 Pa.C.S. § 9799.13 (relating to applicability) commits an offense if he knowingly fails to:
>
> * * * *
>
> (3) provide accurate information when registering under 42 Pa.C.S. § 9799.15, 9799.19 or 9799.25.

***Id.*** at § 4915.1(a)(3). Pursuant to the language in 42 Pa.C.S. § 9799.13 in November of 2015, the following persons were "subject to registration:"

> An individual who, on or after the effective date of this section, is required to register in a sexual offender registry in another jurisdiction or in a foreign country based upon a conviction for a sexually violent offense or under a sexual offender statute in the jurisdiction where the individual is convicted and:
>
> (i) has a residence in this Commonwealth or is a transient[.]

42 Pa.C.S. § 9799.13(7)(i), 2011, Dec. 20, P.L. 446, No. 111, § 12, effective in one year [Dec. 20, 2012]."[5]

---

[5] We note the language in Subsection (7) was amended in February of 2018, and the entire statute was reenacted and amended in June of 2018. The amendments omitted the introductory language "[a]n individual who, on or after the effective date of this section, is required to register[,]" and replaced it with "[a] sexual offender required to register." 42 Pa.C.S. § 9799.13(7)(i), 2018, June 12, P.L. ____, No. 29, § 6. For purposes of our analysis, we will

Santana does not dispute he was "subjected to [sex offender] registration" in the state of New York before he relocated to Pennsylvania, and the term of his registration period in New York, as well as in Pennsylvania, was for his lifetime. Santana's Brief at 5; N.T., 7/26/2017, at 8. Rather, the crux of his argument is that the relevant date for registration purposes is his 1983 New York conviction, not his November 2015 relocation to Pennsylvania. Santana insists:

> [He] should never have been subject to SORNA's requirements, and thus, cannot be punished for failing to abide by them even after its effective date. [His] current charge is based exclusively upon his failure to comply with an unconstitutional enforcement scheme imposed on conduct occurring prior to December 20, 2012, [SORNA's effective date,] and thus, *Muniz* controls.

Santana's Brief at 10. For the reasons that follow, we conclude *Muniz* is not controlling under the facts of this case, and the court properly denied Santana's motion to withdraw his guilty plea.

As this Court recently stated, "*Muniz* was a sea change in the longstanding law of this Commonwealth as it determined that the registration requirements under SORNA are not civil in nature but a criminal punishment." *Commonwealth v. Butler*, 173 A.3d 1212, 1215 (Pa. Super. 2017). The pertinent facts in *Muniz* were as follows:

> On February 7, 2007, after a bench trial in Cumberland County, [Muniz] was convicted of two counts of indecent assault arising out of an incident where he touched the breasts of his

---

consider the language of the statute at the time of Santana's relocation to Pennsylvania, when he first came under this state's jurisdiction.

girlfriend's twelve-year old daughter. Sentencing was scheduled for May 8, 2007, at which time [Muniz] would have been ordered to register as a sex offender with the Pennsylvania State Police for a period of ten years pursuant to then-effective Megan's Law III. However, [Muniz] failed to appear for his sentencing hearing and absconded until he was apprehended on unrelated charges in Rhode Island in September 2014. During his absence, the General Assembly had replaced Megan's Law III with SORNA. Under SORNA, persons convicted of indecent assault of a person less than thirteen years of age [] are categorized as Tier III offenders and are required to register as sex offenders for the remainder of their lives.[3] Accordingly, [Muniz] was sentenced to four to fourteen months' imprisonment and ordered to comply with lifetime registration requirements under SORNA.

_____

[3] [Muniz's] seven year absence from the Commonwealth is of no moment. SORNA applies retroactively to any individual serving a sentence for a sexual offense or any individual who had not completed their registration period under prior registration statutes as of SORNA's effective date of December 20, 2012. 42 Pa.C.S. § 9799.13. Had [Muniz] been sentenced in 2007 and subject to registration under Megan's Law III, he would not have completed his ten-year registration period when SORNA became effective and thus his ten-year registration period would have been converted to a term of lifetime registration.

*Muniz*, *supra*, 164 A.3d at 1193 (citations and some footnotes omitted).

Muniz challenged his registration requirements in a post-sentence motion, which the trial court denied. He then appealed to a panel of this Court, which affirmed in an unpublished decision. The Supreme Court granted allowance of appeal on two issues, namely whether the registration requirements are unconstitutional under the *ex post facto* clauses of the United States and Pennsylvania Constitutions. **See id.** at 1194.

The Supreme Court reversed in a plurality decision. **See supra** n. 3. Writing the OAJC, Justice Dougherty held "SORNA's registration provisions

constitute punishment notwithstanding the General Assembly's identification of the provisions as nonpunitive[,]" and "retroactive application of SORNA's registration provisions" violates both the federal and state *ex post facto* clauses. **Id.** at 1193. With regard to its *ex post facto* analysis, the OAJC explained:

> The central concern in incorporating ex post facto clauses in both federal and state constitutions was to "assure that federal and state legislatures were restrained from enacting arbitrary or vindictive legislation" following the American Revolution. However, as noted by Chief Justice Chase in **Calder** [**v. Bull**, 3 U.S. 386 (1798)], the term ex post facto "had been in use long before the Revolution." The clauses were thus also directed at the separate concern, relevant here, that individuals are entitled to "fair warning" about what constitutes criminal conduct, and what the punishments for that conduct entail. The United States Supreme Court, in **Weaver v. Graham**, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), succinctly articulated this idea in stating, "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Based on both these concerns, Chief Justice Chase set out four categories of laws that violate such prohibitions:
>
>> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.
>
> **Calder**, 3 U.S. at 390. Furthermore, **"two critical elements" must be met for a criminal or penal law to be deemed ex post facto: "it must be retrospective, that is, it must apply**

- 8 -

**to events occurring before its enactment, and it must disadvantage the offender affected by it."** *Weaver*, 450 U.S. at 29, 101 S.Ct. 960 (footnote omitted). As such, "[o]nly those laws which disadvantage a defendant **and** fall within a *Calder* category are ex post facto laws and constitutionally infirm." The ex post facto clauses of the United States and Pennsylvania Constitutions are implicated here because a holding rendering the effects of SORNA's registration requirements punitive would place the statute into the third *Calder* category: application of the statute would inflict greater punishment on appellant than the law in effect at the time he committed his crimes.

*Id.* at 1195-1196 (some emphasis supplied and some internal citations omitted).

The OAJC first determined the intent of the General Assembly in enacting SORNA was "not to punish, but to promote public safety through a civil, regulatory scheme." *Id.* at 1210, *quoting Commonwealth v. Williams*, 832 A.2d 962, 972 (Pa. 2003). Therefore, the OAJC proceeded to conduct an analysis of the factors set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), to determine "whether SORNA [was] sufficiently punitive in effect to overcome the General Assembly's stated nonpunitive purpose." *Muniz*, *supra*, 164 A.3d at 1210. After balancing the relevant *Mendoza-Martinez* factors, the OAJC found:

SORNA involves affirmative disabilities or restraints, its sanctions have been historically regarded as punishment, its operation promotes the traditional aims of punishment, including deterrence and retribution, and its registration requirements are excessive in relation to its stated nonpunitive purpose.

*Id.* at 1218. Therefore, the OAJC held "the retroactive application of SORNA to [Muniz] violates the ex post facto clause of the United States Constitution." *Id.*

The OAJC then considered whether the SORNA's retroactive application violated the *ex post facto* clause in the Pennsylvania Constitution. In concluding that it does, the OAJC opined: "Pennsylvania's ex post facto clause provides even greater protections than its federal counterpart, and as we have concluded SORNA's registration provisions violate the federal clause, we hold they are also unconstitutional under the state clause." *Id.* at 1223.

As noted above, Justices Baer and Donahue joined the OAJC in full. Justice Wecht filed a Concurring Opinion, joined by Justice Todd, in which he agreed with the OAJC's conclusions that (1) the registration requirements are punitive, and (2) "SORNA (as applied to Muniz) violated Article 1, Section 17 of the Pennsylvania Constitution." *Id.* at 1224. However, Justice Wecht disagreed with the OAJC's holding that "Pennsylvania's *ex post facto* clause provides even greater protection than its federal counterpart."[6] *Id.*, *citing* OAJC at 1223. Indeed, Justice Wecht stated he "would resolve this case on state constitutional grounds, and decline to address Muniz's claim that SORNA

---

[6] Indeed, Justice Wecht's Concurring Opinion concluded: "Neither Muniz nor the lead opinion offer much to undermine the perception that—as the text and history of our Constitution seem to require, as those who wrote it seemed to expect, and as our past cases have all suggested—the state and federal *ex post facto* clauses are coterminous." *Id.* at 1232.

also violated the *ex post facto* clause of the United States Constitution." ***Id.*** at 1224 n.2. Justice Saylor was the lone dissenter,[7] concluding, "SORNA does not impose punishment and thus, does not violate either the federal or state constitutions' *ex post facto* clauses." ***Id.*** at 1233. Despite the lack of a majority opinion in ***Muniz***, this Court has recognized "the binding precedent emerging from [that decision] is confined to the determination that SORNA's registration requirement is punishment that runs afoul of the *ex post facto* clause of the Pennsylvania Constitution when applied retroactively." ***Commonwealth v. Hart***, 174 A.3d 660, 667 n.9 (Pa. Super. 2017). With this background in mind, we consider the argument in the case before us.

Santana contends he is not subject to registration under SORNA because his crime was committed in 1983, before SORNA's effective date. ***See*** Santana's Brief at 10. Indeed, he maintains "the important date for this [a]ppeal is not the date of his failure to comply, but the date of the underlying sexual offense for which Section 4915.1 is intended to enforce." ***Id.*** Santana insists that because he "never should have been subject to SORNA's requirements, [he] cannot be punished for failing to abide by them even after its effective date." ***Id.*** While he acknowledges he might meet the criteria for registration, Santana contends that, pursuant to ***Muniz***, he has no legal

---

[7] Justice Mundy did not participate in the consideration or decision of the case.

requirement to comply; therefore, he cannot be convicted of violating Section 4915.1. *See id.* at 13. According to Santana:

> *Muniz* held that the provisions of SORNA which obligate a person to register, verify, or provide information to the Pennsylvania State Police cannot apply retroactively to someone whose underlying sexual offense occurred prior to December 20, 2012.
>
> The failures specified under Section 4915.1 are not generic or stand-alone requirements that vaguely penalize any registration oversights. They are specific, and are tied to the statutes which impose the registration obligations. 18 Pa.C.S. §§ 4915.1(a)(1)-(3) (cross referencing 42 Pa.C.S. §§ 9799.15; 9799.19; 9799.25). Each of these provisions falls under SORNA. In order to be convicted, the registrant, if he is subject to registration, must fail to follow a specific statutory obligation. Since those statutory obligations cannot apply to [Santana], and he is not obligated to complete them, he cannot "knowingly" "fail" to "register" or "verify" his information under them.

*Id.* at 14. Consequently, Santana's entire argument hinges on his assertion that he is not subject to the registration requirements of SORNA. It is with this key contention we disagree.

In *Muniz*, the defendant was subject to the registration requirement as a result of his conviction of two counts of indecent assault. *See Muniz*, *supra*, 164 A.3d at 1193. Significantly, when Muniz committed the crimes in 2007, he would have been required to register as a sex offender for a period of ten years. *See id.* However, he absconded before sentencing, and was not apprehended and sentenced until September of 2014. During his absence, SORNA was enacted, and under the new statute, Muniz was subject to registration for his lifetime. *See id.* Therefore, the change in the law that occurred between the time he committed his crimes and application of the

statute, increased his punishment. For that reason, the **Muniz** Court held the retroactive application of SORNA violated the *ex post facto* clause of the Pennsylvania Constitution. **See id.** at 1196.

Here, however, at the time Santana relocated to Pennsylvania in November of 2015, he was subject to lifetime registration in New York. **See** Trial Court Opinion, 10/17/2017, at 1 n.2. Under SORNA, he was required to register as a sex offender in Pennsylvania pursuant to section 9799.13(7):

> The following individuals shall register with the Pennsylvania State Police as provided in sections 9799.15 (relating to period of registration), 9799.19 (relating to initial registration) and 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police) and otherwise comply with the provisions of this subchapter:
>
> (7) An individual who, on or after the effective date of this section, is required to register in a sexual offender registry in another jurisdiction … based upon a conviction for a sexually violent offense or under a sexual offender statute in the jurisdiction where the individual is convicted and … has a residence in this Commonwealth[.]

42 Pa.C.S. § 9799.13(7), 2012, July 5, P.L. 880, No. 91, § 5, effective Dec. 20, 2012. Accordingly, unlike the defendant in **Muniz**, who was required to register based upon his commission of a sexually violent offense in Pennsylvania, Santana was required to register based upon the fact that he was previously required to register as a sex offender in another state. Furthermore, the lifetime registration requirement imposed under SORNA did not increase his punishment because he was already subject to a lifetime registration requirement in New York. Consequently, Santana was not

disadvantaged by Pennsylvania's registration requirement.[8]  ***See Muniz, supra***, 164 A.3d at 1196 (requiring "two critical elements" for a penal law to be deemed *ex post facto*:  "it must be retrospective, that is, it must apply to event occurring before its enactment, **and it must disadvantage** the offender affected by it.") (quotation omitted and emphasis supplied).

The trial court summarized the differences between Muniz and Santana as follows:

> Here, [Santana] committed his crime and was convicted under the laws of New York and was determined to be subject to registration under New York's SORA, whereas Mr. Muniz was convicted in Pennsylvania and later found to be subject to SORNA after having absconded prior to sentencing.  Furthermore, SORNA was already in effect when [Santana] relocated from New York to Pennsylvania, therefore providing him with constructive notice that he would be subject to SORNA upon his relocation to Pennsylvania.  Mr. Muniz never received such notice.  Finally, [Santana's] required period of registration did not increase (lifetime to lifetime), nor did the requirements significantly change as to make them "sufficiently onerous", as in ***Muniz***.[13]

_____

[13] As a Level 3 sex offender under New York's SORA, [Santana] was designated as a lifetime registrant and was required to personally verify his address with the local law enforcement agency every ninety days and to have a new photograph taken.  Furthermore, he was required to register within 10 calendar days

_____

[8] We recognize the Dissent conducts a detailed comparison of the sex offender registration statutes in Pennsylvania and New York, and concludes Pennsylvania's SORNA is more burdensome than New York's statute.  However, Santana does not make that argument on appeal.  In fact, he insists a comparison of his prior registration requirements in New York to those he faced in Pennsylvania is "irrelevant" as the pertinent question, in his view, is "whether SORNA was applied retroactively to [his] offense in 1983."  Santana's Brief at 10.  Accordingly, we conclude that argument is waived.

after any changes to his address or internet accounts/identifiers. Pennsylvania's SORNA had similar lifetime reporting requirements. However, any changes to address or internet accounts/identifiers had to be reported within 3 business days.

Trial Court Opinion, 10/17/2017, at 9 (emphasis removed).

We agree with the trial court's decision to construe **Muniz** narrowly. **See id.** at 10. Indeed, the facts in the case before us are distinguishable from the facts in **Muniz** which led to the Supreme Court's holding. Furthermore, we emphasize the trial court's concern regarding the practical effect of applying **Muniz** to the case *sub judice*:

> [T]he practical effect of construing **Muniz** so broadly, as [Santana] suggests, is essentially providing a scenario where a sex offender from another state who committed a sex offense prior to 2012, and required to register in that state, could move to Pennsylvania and escape further registration requirements, therefore creating a "safe haven" in Pennsylvania for sex offenders across the country. We do not believe that this was the intent of the Supreme Court when it decided **Muniz**.

**Id.** at 11.

The prohibition against *ex post facto* laws is designed "to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed[, and] restrict[] governmental power by restraining arbitrary and potentially vindictive legislation." **Weaver v. Graham**, 450 U.S. 24, 28-29 (1981). Here, Santana had fair warning of the relevant registration requirements when he relocated to Pennsylvania. To consider the date of his conviction as the relevant time period would be absurd – Santana would need to be informed of every sex offender registry law in

every state before he committed a sexual offense. Further, we find SORNA, as applied to Santana, did not represent arbitrary or vindictive legislation.

Therefore, because we conclude (1) Santana was required to comply with the registration requirements of SORNA, (2) those registration requirements did not constitute an *ex post facto* application of the law as to Santana; and (3) Santana did, in fact, violate his registration requirements, we agree with the trial court that Santana has provided no valid basis upon which to withdraw his guilty plea.[9] Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

President Judge Emeritus Ford Elliott joins this Opinion.

Judge Bowes files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/19

---

[9] We note Santana also argues *Muniz* does not "revive older versions of Megan's Law." Santana's Brief at 18. He raises this claim to preempt an argument by the Commonwealth that even if *Muniz* precluded the application of SORNA's registration requirements, he could be prosecuted for failing to comply with a prior version of the registration act. *See id.* at 18-26. Because we conclude *Muniz* does not apply under the facts of this case, we need not address this argument.