J-S24004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JENNIFER LYNN GESUALE | : | No. 1305 WDA 2020 |

Appeal from the Order Entered November 4, 2020
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0004392-2018

BEFORE: DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: JANUARY 5, 2022**

The Commonwealth appeals from the Order granting Appellee Jennifer Lynn Gesuale's post-sentence Motion to Withdraw her negotiated guilty plea to one count of Simple Assault.[1] After careful review, we affirm.

We glean the following factual and procedural history from the trial court's opinion and the certified record. On September 9, 2018, officers from the Murrysville Police Department responded to a domestic violence report at Appellee's address. When they arrived, Appellee's husband told them that Appellee had hit him about his face, scratched him, and choked him during an argument. The police immediately took Appellee into custody. On December

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2701(a)(1).

7, 2018, the Commonwealth filed an information charging Appellee with Simple Assault and Strangulation.[2] Appellee was released on an unsecured bond.

Richard H. Galloway, Esq., entered his appearance as Appellee's counsel on December 31, 2018. The court originally set trial for June 2019 but granted multiple continuances in response to court delays and Appellee's motions, eventually scheduling trial for December 2, 2019.

In June 2019, Appellee and her husband appeared in a divorce hearing under a separate docket. Three months later, during a dispute with court staff regarding her request for transcripts from the June hearing, Appellee surreptitiously recorded several telephone conversations with members of the court staff and posted them on the internet. The court staff discovered the recordings, and in response, the Commonwealth charged Appellee with violations of the Wiretap Act under a separate docket.

As a result of the wiretap violations, the court revoked Appellee's bond on October 21, 2019, and she returned to jail. In November 2019, the court granted Attorney Galloway's Motion to Withdraw, and appointed new counsel, Emily Smarto, Esq. After the court continued the trial in the instant matter to February 2020, Appellee filed a motion to reinstate her bond. The court granted the motion on December 23, 2019, and Appellee was released from jail.

---

[2] 18 Pa.C.S. §§ 2701(a)(1) and 2718(a)(1), respectively.

On February 5, 2020, the court continued the case until April due to court delays, and subsequently continued the case several more times in response to the Covid-19 judicial emergency. On July 27, 2020, on Defendant's motion, the court granted an additional continuance and removed the case from the trial list to allow for plea negotiations.

At an October 27, 2020 Plea Hearing held by the Hon. Timothy Krieger, Appellee's counsel announced that Appellee had agreed to plead guilty to misdemeanor Simple Assault in exchange for the dismissal of the felony Strangulation charge and a recommended sentence.[3] The Commonwealth then informed the court that it recommended a term of incarceration of "not less than 79 days, nor more than 23 months[, with] credit for 79 days previously served," and stated that it had "no objection to her being paroled forthwith[.]" N.T. Plea and Sentencing, 10/27/20, at 2-3.

The court asked Appellee to confirm if the above terms were "what [she was] promised[,]" and Appellee replied "Yes." *Id.* at 4. The court then asked if there was "[a]nything else promised . . . that wasn't mentioned today[.]"

_____

[3] Appellee also submitted a written, signed colloquy in which she acknowledged that she understood her rights and the potential consequences of the plea. However, the written colloquy itself did not actually contain within it a thorough explanation of the consequences of her plea. Rather, attached to the back of the written colloquy is a standardized form entitled "General Conditions Governing Probation, Parole and Intermediate Punishment." **See** attachment to Guilty Plea Petition, dated 10/27/20. Although this form states that "[a]s a part of your negotiated plea agreement, you will be sentenced to a period of supervision," neither Appellee nor her attorney signed or initialed this attachment. The record from the plea hearing contains no indication that Appellee was aware of this annexed statement. **See** N.T. Plea, 10/27/20.

*Id.* In an extended, rambling reply, Appellee answered that she believed that the Commonwealth had abandoned an earlier agreement to a global plea bargain that would have also disposed of her wiretap charges, and described the terms of yet another abandoned plea deal that her prior counsel had negotiated with the Commonwealth. *Id.* at 4-5. Appellee concluded by airing general frustrations regarding her divorce. *Id.* at 8-10. In response, the trial court reviewed the history of the plea negotiations with Appellee's counsel and explained to Appellee that her divorce was a separate matter over which it had no authority.

The court then engaged Appellee in a colloquy to determine whether her plea was knowing, intelligent, and voluntary. The court explained that the maximum sentence under the Simple Assault statute was two years imprisonment and a $5,000 fine. It then explained the elements of the simple assault offense, and asked Appellee if she understood that charge. Appellee replied that she did. At no point during the colloquy did the court ask Appellee to confirm that she understood the possible range of sentences under the plea or that her sentence could include a period of parole following incarceration.

At the conclusion of this colloquy, the court asked Appellee "are you pleading guilty?" *Id.* Appellee replied "I guess that's my choice today, yes." *Id.* at 11. The court instructed Appellee that she also had the right to plead not guilty and that the decision was ultimately hers, and asked again if she chose to plead guilty. This prompted another extended discussion, during which Appellee expressed ambivalence over whether she should "just take it

- 4 -

to trial" or whether she should accept the plea so that the matter could "be over with[.]" *Id.* at 12-13.

At the close of this exchange, Appellee asked the trial court "[s]o just go ahead and do it? You think that's my best interest to?" *Id.* at 14. The court explained that it would not answer that question for her, after which she responded, "that's fine, yes." *Id.* The court then announced that, "based on your statements . . . I'll accept your plea as in your best interest." *Id.*

The court immediately proceeded to sentencing. It adopted the Commonwealth's recommendation and sentenced Appellee to 79 days to 23 months incarceration with credit for time served, and directed that Appellee be "paroled forthwith[.]" *Id.* at 14. The court then directed Appellee to meet with a probation officer, and counsel for both Appellee and the Commonwealth left the courtroom.[4] Soon after leaving, Appellee returned to the courtroom alone and explained to Judge Krieger that she did not understand that her sentence would include a period of parole and requested to withdraw her guilty plea. He advised Appellee to discuss the matter with counsel and, if appropriate, file a motion to withdraw the plea.

Two days later, on October 29, 2020, Appellee filed a Motion to Withdraw her guilty plea. In the motion, Appellee averred that "she was

---

[4] Because Appellee's sentence was less than 24 months, the common pleas court retained the authority to grant parole, and the Westmoreland County Adult Probation and Parole Department, not the Pennsylvania Board of Probation and Parole, was responsible for supervising her parole. 42 Pa.C.S. § 9776(a), *Fross v. Cty. of Allegheny*, 20 A.3d 1193, 1196 n.3 (Pa. 2011).

unaware that her sentence included a period of parole" and that, therefore, "she did not make a knowing, voluntary, or intelligent plea[.]" Motion to Withdraw Guilty Plea, dated 10/29/20, at ¶¶ 2-3. The court granted the motion on the same day. Neither the plea withdrawal motion nor the court's order appeared on the docket until November 4, 2020.

On November 10, 2020, the Commonwealth filed a Motion for Reconsideration, noting that it was not aware that any post-sentence motion to withdraw the plea had been filed until November 4, 2020, after the court had granted it. In response, the court scheduled a hearing on the Commonwealth's motion for November 23, 2020.

At the hearing, Attorney Smarto stated that Appellee had contacted her "immediately" after the hearing to request to withdraw her plea. N.T. Reconsideration, 11/23/20, at 4. She also told the court that she believed that Appellee did not understand that her sentence would include a period of parole. She explained that when she told Appellee "you're not getting any additional time," Appellee "misconstrued" this to mean that her plea did not include any additional period of supervision. *Id.* Appellee herself stated that, at the time she entered her plea, she believed that her negotiated sentence did not include any period of supervision following the sentence of time served. *Id.* at 8.

Judge Krieger observed that, based on his experience with Appellee, he understood her to be "generally confused in this courtroom," and that Appellee's testimony at the plea hearing demonstrated that "at the time, she

wasn't sure what she wanted to do." *Id*. at 5, 15. He also described how "almost immediately after" the initial hearing, Appellee reentered his courtroom alone and tried to withdraw her plea after learning that her sentence included a period of parole. He considered this act to be additional evidence that she did not understand the terms of her sentence when she entered her plea. *Id.* at 5.

At the conclusion of the hearing, the court denied the Motion for Reconsideration, announcing "that, based on both [Appellee's] statements today, based on my recollections, and also the transcript, she was very undecided about what to do, based on my observation, however, and based on the fact that she came down almost immediately after, the plea was not entered knowingly or intelligently at the time." *Id*. at 16.

The Commonwealth filed a timely Notice of Appeal. Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

The Commonwealth presents the following question:

> Whether the court below erred in granting Appellee's post-sentence Motion to Withdraw Guilty Plea where the lower court conducted a proper colloquy, Appellee completed a guilty plea petition with her attorney and Appellee failed to carry her burden to demonstrate prejudice on the order of manifest injustice?

Appellant's Br. at 5 (unnecessary capitalization omitted).

"It is well-settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court." ***Commonwealth v. Kehr***, 180 A.3d 754, 757 (Pa. Super. 2018) (citation omitted). We therefore review a trial court's decision on a motion to withdraw

a guilty plea for abuse of discretion. *Id.* Because "discretionary power can only exist within the framework of the law," a trial court must exercise it "on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary action." *Id.* (citation omitted). A trial court abuses its discretion when its decision "represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Id.* (citation omitted). Because we recognize that the trial court, "[a]s the fact-finder, [is] in the best position to assess the credibility of the witnesses' testimony[,]" we "will not reverse a trial court's credibility determination absent the court's abuse of discretion as fact finder." *Commonwealth v. Moser*, 921 A.2d 526, 530 (Pa. Super. 2007).

To prevail in a post-sentence motion to withdraw a guilty plea, a "defendant must demonstrate that manifest injustice would result if the court were to deny [the] motion[.]" *Kehr*, 180 A.3d at 756-57 (citation omitted). Manifest injustice exists where "the plea was not tendered knowingly, intelligently, and voluntarily." *Id.* at 757 (citation omitted).

Before accepting a plea, the court should conduct on an on-the-record inquiry to determine whether the defendant understands and voluntarily accepts the terms of her plea agreement. Pa.R.Crim.P. 590(B)(2). In the course of the colloquy, the court should, *inter alia*, inquire into whether the defendant understands the range of possible sentences for the charges to which she is pleading guilty. *Commonwealth v. Morrison*, 878 A.2d 102,

107 (Pa. Super. 2005). In determining a plea's validity, the trial court is not bound to consider only the defendant's testimony at the colloquy; rather, it "must examine the totality of circumstances surrounding the plea." **Kehr**, 180 A.3d at 757 (citation omitted). This "include[s], but [is] not limited to[,] transcripts from other proceedings, off-the-record communications with counsel, and written plea agreements." **Commonwealth v. Fears**, 836 A.2d 52, 64 (Pa. 2003).

Pennsylvania law presumes that a defendant who enters a guilty plea is aware of what she is doing. **Commonwealth v. Pollard**, 832 A.2d 517, 523 (Pa. Super. 2003). Although a defendant who pleads guilty is bound by the statements she makes in open court and cannot later assert grounds for withdrawing the plea that contradict the statements she made at her plea colloquy, the "law does not establish a *per se* rule that may be applied rigidly with no consideration of the nature of the averments made at the guilty plea colloquy in comparison to the claims raised on appeal." **Id.** at 524.

In the instant case, the trial court granted Appellee's Motion to Withdraw upon concluding, as a matter of fact, that Appellee did not understand the terms of her negotiated plea. As it explained in its 1925(a) Opinion, it found Appellee's plea not knowing, intelligent, and voluntary because, "although she expressed that she understood the sentencing aspect of her negotiated plea, she did not correctly and fully appreciate the meaning of the terms of the sentence to be imposed by the court." Trial. Ct. Op. at 6. The court explained that it based this conclusion on Appellee's demeanor during the original plea

hearing and Appellee's "swift and immediate return to the courtroom after meeting with her probation/parole officer in order to express her confusion and to request to withdraw her guilty plea." *Id.* Accordingly, "her plea . . . was not intelligent, knowing, and voluntary and manifest injustice would result from a denial of [Appellee's] request to withdraw her plea of guilty." *Id.* at 10.

Our review of the record supports the court's conclusion that Appellee did not enter her plea knowingly, voluntarily, or intelligently. As the factfinder, the trial court was permitted to take into account the totality of the circumstances surrounding the plea, not just Appellee's sworn testimony during the plea colloquy, in considering the motion to withdraw. The evidence presented at both the plea hearing and the reconsideration hearing, including the trial court's observation on the record of Appellee's immediate post-sentence behavior, supports the court's finding. *See generally* N.T. Plea, 10/27/20; N.T. Reconsideration Hearing, 11/23/20, at 16.

The Commonwealth argues that the trial court abused its discretion and erred as a matter of law by allowing Appellee to withdraw her plea post-sentence because "Appellee is bound by the statements she made in open court." Commonwealth's Br. at 21. The Commonwealth further asserts that because Appellee "offered no testimony under oath" at the reconsideration hearing, "Appellee did not establish that a manifest injustice occurred." *Id.* at 21-22, 27. We disagree.

The Commonwealth essentially asks us to make a *de novo* factual determination based on the record. This demonstrates a misunderstanding of our standard of review set forth above. As we have concluded that there is support in the record for the trial court's finding, we may not reweigh the record evidence to reach a different factual determination. The Commonwealth's argument fails to convince us that the trial court abused its discretion in reaching its conclusion.

A factual finding that a plea was not entered knowingly, voluntarily, and intelligently means, as a matter of law, that the court's acceptance of such a plea is itself a manifest injustice. *Kehr*, 180 A.3d at 757. Thus, we cannot agree with the Commonwealth's contention that the court committed legal error in allowing Appellee to withdraw her plea.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  01/05/2022