J-S37011-17

2017 Pa Super 314

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TINA MARIA MOYER | |
| Appellant | No. 1663 MDA 2016 |

Appeal from the Judgment of Sentence Entered June 21, 2016
In the Court of Common Pleas of Adams County
Criminal Division at No: 0000782-2015

BEFORE:  STABILE, J., MOULTON, J., and MUSMANNO, J.

OPINION BY STABILE, J.: **FILED OCTOBER 02, 2017**

Appellant, Tina Marie Moyer, appeals from the June 21, 2016 judgment of sentence imposing an aggregate 36 to 108 months of incarceration for homicide by vehicle (75 Pa.C.S.A. § 3732), recklessly endangering another person ("REAP") (18 Pa.C.S.A. § 2705), and driving under the influence of a controlled substance (75 Pa.C.S.A. § 3802).  We affirm.

The trial court summarized the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> Here, in [the] light most favorable to the Commonwealth as verdict winner, the evidence at trial showed the following: Appellant was driving her vehicle on Kindig Road, ran a stop sign at the intersection of Kindig Road and Route 97, and pulled out into oncoming traffic on a busy road with a speed limit of thirty-five (35) miles per hour.  Appellant's line of sight going in the southbound direction was completely obstructed by a building as

> Appellant approached the stop sign. Rather than inch up past the stop sign to look for oncoming traffic, Appellant never stopped and proceeded into the intersection, traveling 12 miles per hour, pulling out directly in front of decedent's northbound box truck. The box truck crashed into Appellant's car, crossed the double yellow line, and then crashed into a tow truck driving southbound on Route 97. The evidence also showed that Appellant was familiar with her route of travel, the placement of the stop sign, and the nature of the intersecting road.

Trial Court Opinion, 11/29/16, at 5.

At the conclusion of Appellant's trial, a jury found her guilty of homicide by vehicle and REAP, but not guilty of homicide by vehicle while driving under the influence (75 Pa.C.S.A. § 3735). The trial court found Appellant guilty of DUI and various summary traffic offenses. On June 21, 2016, the trial court sentenced Appellant to 27 to 84 months of incarceration for homicide by vehicle, a consecutive 9 to 24 months for REAP, and a concurrent 3 to six months for DUI.

On June 23, 2016, two days after Appellant's sentence, the United States Supreme Court handed down its decision in **Birchfield v. North Dakota**, 136 S. Ct. 2160 (2016), wherein the Court held that criminalization of a suspect's refusal to consent to a blood test violates the Fourth Amendment to the United States Constitution. Instantly, Appellant claims that police provided her with Pennsylvania form DL-26,[1] which states that refusal to consent to a blood draw would result in enhanced criminal

_____

[1] Form DL-26 was revised after **Birchfield**.

penalties. Following ***Birchfield***, this Court has held that such penalties are constitutionally invalid, and that consent obtained under threat of increased penalties is constitutionally suspect. ***Commonwealth v. Giron***, 155 A.3d 655 (Pa. Super. 2017) (vacating a sentence that included increased criminal penalties based on the defendant's refusal to consent to a blood test); ***Commonwealth v. Evans***, 153 A.3d 323 (Pa. Super. 2016) (remanding for evaluation of the validity of the defendant's consent). The precise circumstances of Appellant's consent were not the subject of a hearing and therefore are not of record. The blood draw revealed trace amounts of Alprazolam and THC.[2]

On July 1, 2016, Appellant filed a timely post-sentence motion arguing that the Commonwealth produced insufficient evidence to support her homicide by vehicle conviction. The motion did not address ***Birchfield***. The trial court denied Appellant's motion on July 11, 2016. On July 13, 2016, according to the certified docket, Appellant filed an untimely second post-sentence motion, titled "Motion to Vacate Sentence," asking the trial court to vacate her DUI conviction under ***Birchfield***. On August 10, 2016, the trial court entered an order accepting Appellant's July 13, 2016 motion as a *nunc pro tunc* post-sentence motion. Because the trial court's August 10, 2016 order fell within 30 days of its July 11, 2016 order denying Appellant's

---

[2] In ***Commonwealth v. Ennels***, ___ A.3d ___ (Pa. Super. 2017) this Court held that ***Birchfiled*** applies to alcohol and drug-related DUI investigations.

original post-sentence motion, the trial court retained jurisdiction and the appeal period was tolled. *Commonwealth v. Dreves*, 839 A.2d 1122 (Pa. Super. 2003) (*en banc*). The trial court denied Appellant's *nunc pro tunc* motion on September 7, 2016, concluding that she was not entitled to retroactive application of *Birchfield* because she did not preserve a challenge to the warrantless blood draw during trial. Appellant filed this timely appeal on October 6, 2016.

Appellant challenges the sufficiency of the evidence in support of her homicide by vehicle conviction and the legality of her DUI conviction in light of *Birchfield*. We will consider these issues in turn. The following standard governs this Court's review of a sufficiency of the evidence challenge:

> When evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. We do not weigh the evidence or make credibility determinations. Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

*Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010), *appeal denied*, 29 A.3d 796 (Pa. 2011).

Section 3732 of the Motor Vehicle Code defines homicide by vehicle:

> Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying

to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732(a).

The Crimes Code defines criminal recklessness as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3). We have held that "[t]he concept of gross negligence is encompassed within the concept of recklessness as set forth in [§ 302(b)(3)]."[3] *Commonwealth v. Matroni*, 923 A.2d 444, 448 (Pa. Super. 2007). In construing the definition of recklessness as applied to § 3732, we have upheld convictions where the defendant's conduct "evidenced a conscious disregard of the substantial and unjustified risk that he would be involved in a traffic accident causing death." *Id.* at 449; *see also Commonwealth v. Grimes*, 842 A.2d 432, 435 (Pa. Super. 2004), *appeal denied*, 864 A.2d 1203 (Pa. 2004).

---

[3] Appellant argues that the trial court erroneously gave an instruction defining gross negligence as a lesser form of culpability than recklessness. Appellant's Brief at 11-12. Appellant also acknowledges that this issue was not preserved in the trial court. *Id.* We therefore will not consider it.

In *Matroni*, this Court upheld a conviction under § 3732 where the defendant, after tailgating a pickup truck in the left southbound lane of the Fruitville Pike in Lancaster County, abruptly changed lanes several times and then slammed into a tractor trailer in the left southbound lane. *Matroni*, 923 A.2d at 447. The tractor-trailer was forced into the northbound lanes, where it struck an oncoming car, killing the driver. *Id.* at 447-48. We reasoned that the defendant's "speeding, tailgating, and erratically changing lanes" was sufficient evidence of recklessness. *Id.* at 448. In *Grimes*, we upheld the conviction where the defendant swerved into the oncoming lane of traffic ten to twenty times and eventually struck the victim's oncoming car, killing him. *Grimes*, 842 A.2d at 433, 435.

Appellant relies heavily on *Commonwealth v. O'Hanlon*, 653 A.2d 616 (Pa. 1995) and *Commonwealth v. McHale*, 858 A.2d 1209 (Pa. Super. 2004). According to Appellant, *O'Hanlon* provides the following examples of felonious recklessness: a person who fires a gun into a crowd; a person who drives his car into a crowd after having aimed it at an individual; or a person who specifically drives at a pedestrian." Appellant's Brief at 11 (citing *O'Hanlon*, 653 A.2d at 618). The *O'Hanlon* Court does indeed provide those examples. But in *O'Hanlon*, the defendant was challenging the sufficiency of the evidence of the requisite *mens rea* for aggravated assault, not homicide by vehicle. *Id.* at 616. As the Supreme Court noted, the *mens rea* for aggravated assault is recklessness "under circumstances

manifesting extreme indifference to the value of human life." **Id.** at 617 (quoting 18 Pa.C.S.A. § 2702(a)(1)). Thus, "[t]he offensive act must be performed under circumstances which almost assure that injury or death will ensue." **Id.** at 618. Because the **O'Hanlon** Court analyzed aggravated assault, a first-degree felony with a different *mens rea* requirement than the third-degree felony of homicide by vehicle, the analysis in **O'Hanlon** is inapposite.

Likewise, in **McHale**, this Court considered whether the Commonwealth produced sufficient evidence of aggravated assault where the defendant, while intoxicated, drove his vehicle into two victims standing near a parked car. The defendant fled the scene, was not licensed to drive, and was uninsured. **McHale**, 858 A.2d at 1210-11. The victims suffered severe injuries but survived. **Id.** at 1211-12. We explained that recklessness manifesting extreme indifference to human life is malice. **Id.** at 1212. Malice, in turn, is "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." **Id.** at 1213. We wrote that "motor vehicle crashes seldom give rise to proof of the malice needed to sustain a conviction for third degree murder or aggravated assault." **Id.** at 1214 (quoting **Commonwealth v. Kling**, 731 A.2d 145, 148 (Pa. Super. 1999), **appeal denied**, 745 A.2d 1219 (Pa. 1999)). The **McHale** Court concluded that the defendant's intoxication and his failure to

stop at the scene, while reprehensible, did not constitute malice. *Id.* at 1216-18.

The facts and holding in *McHale* are not pertinent to the instant matter, as malice is not at issue. Nonetheless, we find instructive the *McHale* Court's criticism of the Commonwealth's apparent attempt to "blur the lines of criminal liability based upon negligence, ordinary recklessness and the form of recklessness encompassed in malice, that reflects 'extreme indifference to the value of human life'" in order to obtain convictions for greater offenses *Id.* at 1218. Appellant, in her reliance on *O'Hanlon* and *McHale*, uses the same line-blurring tactic in an attempt to escape liability for a lesser offense than aggravated assault.

Instantly, as set forth in the trial court's opinion, Appellant drove at a speed of 12 miles per hour past a stop sign onto a busy street with a building obstructing her view of the cross traffic as she approached the intersection. The speed limit for the cross traffic was 35 miles per hour. Appellant was familiar with the intersection. Appellant repeatedly characterizes her maneuver as a "rolling stop" and a mere vehicle code violation that did not constitute criminal recklessness. Appellant also notes that she did not commit multiple vehicle code violations, as did the defendants in *Matroni* and *Grimes*. She further argues that the victim's death was extremely unlikely given the nature of her conduct, and that

death occurred because the victim was not wearing a seatbelt and because he was ejected through the open passenger door of his box truck.

While Appellant would have us dismiss her conduct as a mere rolling stop, we conclude that the record supports the jury's finding that Appellant acted recklessly. Appellant acknowledges that her vehicle slowed from 25 miles per hour to 12 miles per hour and remained at 12 miles per hour for two seconds prior to impact. Moving at 12 miles per hour past a stop sign evidences more than a simple failure to come to a complete stop. Additionally, we must consider that the stop sign preceded a busy cross street, and that a building obscured the view of one lane of cross traffic. Next, we must consider that Appellant was not braking for the final two seconds before impact, from which we can infer that Appellant did not observe that the accident was imminent. Finally, we consider that Appellant was familiar with the intersection and had driven through it many times. Thus, it can be can infered that she knew she was turning onto a busy street and knew that a building partially obscured the view of cross traffic on one side. In light of all of this evidence, we conclude the Commonwealth produced sufficient evidence that Appellant exhibited a "conscious disregard of the substantial and unjustified risk that [s]he would be involved in a traffic accident causing death." **Matroni**, 923 A.2d at 449. As in **Matroni**, Appellant crashed into a vehicle with sufficient impact to force it into the

opposing traffic lane, where it crashed into an oncoming vehicle, resulting in a fatality.

We are willing to assume that the victim's failure to wear a seatbelt and his open passenger door significantly increased the possibility of his tragic death in this instance. The evidence of the victim's conduct, however, does not alter our conclusion that Appellant, based on the evidence of her own conduct, exhibited a conscious disregard of a substantial and unjustified risk of a fatal accident. Appellant's sufficiency of the evidence argument fails.

Next, Appellant argues that the trial court erred in declining to vacate her DUI conviction under *Birchfield*. As explained above, the United States Supreme Court handed down *Birchfield* two days after Appellant's sentence. Appellant never challenged the warrantless blood draw during trial, and did not raise any issue under *Birchfield* until her *nunc pro tunc* post-sentence motion. In Pennsylvania, it has long been the rule that criminal defendants are not entitled to retroactive application of a new constitutional rule unless they raise and preserve the issue during trial. *Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*), *appeal denied*, 121 A.3d 496 (Pa. 2014). The *Newman* Court relied on *Commonwealth v. Cabeza*, 469 A.2d 146, 148 (Pa. 1983). There, the Supreme Court wrote:

> [W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically

declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved **at all stages of adjudication** up to and including any direct appeal.

*Id.* (emphasis added). Instantly, Appellant failed to challenge the warrantless blood draw at any stage of the litigation prior to her *nunc pro tunc* post-sentence motion. Thus, she is not entitled to retroactive application of ***Birchfield***.

Appellant argues that she should not have been required to anticipate the United States Supreme Court's ***Birchfield*** opinion. The same could be said, however, in nearly every case in which a defendant is denied retroactive application of a new constitutional principle. The rule permitting retroactive application was created for the benefit of defendants who raised and preserved the issue in question and in whose case the issue remained pending while a higher court decided the issue in a similar case. The ***Cabeza*** Court explained:

> In both cases, a defense challenge to the ruling was raised during trial and the issue preserved and argued in post trial motions and on appeal. The only noteworthy difference between [***Commonwealth v. Scott***, 436 A.2d 607 (Pa. 1981),] and the appellee is that ***Scott*** was argued and decided first. The instant case may well have been the case which overruled prior law if ***Scott*** had not been decided while appellee's appeal to the Superior Court was pending. The question of whether to apply an enlightened rule in favor of a discredited one should not be determined by the fortuity of who first has his case decided by an appellate court.

***Id.***

In contrast, Appellant's case could not have been the case that invalidated warrantless blood draws coerced by the threat of criminal prosecution because Appellant never raised the issue. Absent further development of the law of retroactivity from the Pennsylvania Supreme Court, Appellant is not entitled to rely on *Birchfield*. The trial court did not err in refusing to vacate Appellant's DUI sentence.

Because we find no reversible error, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2017