J-A27021-18

2020 PA Super 20

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KATRINA A. SANDERS | |
| Appellant | No. 3562 EDA 2017 |

Appeal from the Judgment of Sentence imposed July 17, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0003929-2016

BEFORE:  BOWES, STABILE, and McLAUGHLIN, JJ.

OPINION BY STABILE, J.:                    **FILED FEBRUARY 3, 2020**

Appellant, Katrina A. Sanders, a bus driver, appeals from her judgment of sentence of five years' probation for homicide by vehicle, careless driving, careless driving-unintentional death, failure to yield the right-of-way, and improper turning movement.[1]  While driving a bus in the scope of her employment with Southeastern Pennsylvania Transportation Authority ("SEPTA"), Appellant struck and killed a 93-year-old pedestrian as he crossed the street.  We hold that the evidence is insufficient to sustain Appellant's conviction for homicide by vehicle because the evidence does not support a finding of recklessness or gross negligence.  Accordingly, we reverse Appellant's conviction for homicide by vehicle and remand for resentencing on all remaining convictions.

_____

[1] 75 Pa.C.S.A. §§ 3732, 3714(a), 3714(b), 3112, and 3334, respectively.

The trial court recounted the evidence as follows:

On April 2, 2016, Officer Floriendo of the Cheltenham Police Department responded to the report of a fatal accident at the intersection of Glenside Avenue and Limekiln Pike in Cheltenham, Montgomery County. Upon arriving at the scene, the officer observed the ninety-three year old victim underneath []a SEPTA bus. Another motorist, who was behind the SEPTA bus in the westbound lane of Glenside Avenue at the time of the accident, testified that as the bus began to make a left-hand turn onto Limekiln Pike, she observed an elderly man begin to cross Limekiln Pike from west to east. The man put his hand up, and then vanished from her sight. She testified that the bus was making a slow, methodical turn. While she was stopped at the light, prior to the bus moving, she did not see the man standing on the corner.

Officer Joseph Morrisey, Jr., was in charge of the investigation and of the crash scene. Morrisey also testified as an expert in crash reconstruction. On the day of the accident, he observed the victim under the SEPTA bus. He testified that in the area of the crash, Limekiln Pike runs north and sou[th], and Glenside Avenue runs east and west. The intersection of these roads is controlled by a traffic signal and there are four designated, marked crosswalks.

He was present for the autopsy of the victim, which indicated that the 93 year old man died of multiple injuries to the trunk and related fractures. Morrisey was present for a mechanical inspection of the bus, which revealed no defects or issues that could have contributed to the crash. As a result of his investigation, Officer Morrisey determined that speed, roadway conditions, weather, or obstructed vision were not contributing factors in the crash.

Officer Morrisey reviewed the Rules Manual for the Surface Transportation and Bus Division from SEPTA, as well and surveillance video taken from inside of the bus. The surveillance video, which depicts the driver's view looking out the front windshield of the bus as well as a view of the driver taken from behind, shows [Appellant] picking up and looking at papers as she is stopped at the light. As a result of this distraction, she stopped over the white stop line, in the crosswalk. As a result, Officer Morrisey opined, she may not have been able to see the victim on the diagonal corner waiting to cross. The video shows that

[Appellant] had an unobstructed view of the intersection for 45 seconds, at which time the victim is visible in the video. During those 45 seconds, [Appellant] was preoccupied with the papers in her hand and did not scan the intersection for pedestrians or other traffic hazards. At the time she begins the turn, there are no other vehicles or pedestrians in the intersection. Before beginning her turn, [Appellant] hesitated approximately 2.33 seconds, in contravention of SEPTA's policy requiring drivers to wait a full four seconds before entering an intersection. Additionally, she turns the wheel with one hand instead of two, while still holding the route paperwork. The victim was in the crosswalk for approximately 6.75 seconds before being struck and made it approximately 32 feet across the intersection. Officer Morrisey was able to determine this by examining the tire marks and body slide marks leading to the bus's final stop which indicated that [Appellant] applied the brakes after she struck the victim. The pedestrian had the right of way. Officer Morrisey testified that in his expert opinion, [Appellant] operated her bus in a reckless, careless and negligent manner, which caused the crash.

[Appellant] testified at trial. She testified that she had been driving for SEPTA for approximately 18 years. She had experience driving an articulating bus off and on for nine years. The day of the crash, she was shuttling passengers between Regional Rail stations. This was her first time on that route. At the end of her route, all passengers disembarked at Glenside station and she was required to travel down Glenside Avenue and make a left onto Limekiln Pike to get back on the route and return the bus to Midvale station. The designated route was outlined in the paperwork she can be seen reading in the surveillance video. She testified that when she reached the intersection, she looked at the corner and didn't see anyone so she began to read the instructions for the route. If she did not follow the designated route, she would be considered off-route, which could lead to termination. When the light turned green, she looked left, forward and right before moving to make sure there was no oncoming traffic. She did not see the victim at any point prior to moving. At the time of impact, she was travelling approximately 8 miles per hour. She testified that as a professional driver, especially of a tandem bus, there is a significant risk of hitting another vehicle or a pedestrian, causing damage or injury.

Following a bench trial, [Appellant] was convicted of Homicide by Vehicle, Careless Driving, Careless Driving-Unintentional Death,

- 3 -

>Improper Movement and Failure to Signal. The Court found her
>not guilty of Improper Left Turn and Reckless Driving.

Trial Ct. Op., 5/29/18, at 1-5 (citations and footnotes omitted). On July 7, 2017, the trial court sentenced Appellant to five years' probation. Following sentencing, Appellant filed timely post-sentence motions, which the trial court denied. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises three issues in this appeal, but we find dispositive her challenge to the sufficiency of the evidence of her conviction for homicide by vehicle. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Tejada*, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Crosley*, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not re-weigh the

evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa. Super. 2015).

> The Vehicle Code defines homicide by vehicle as follows:
>
> Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732(a). To prove this offense, the Commonwealth must prove beyond a reasonable doubt that the defendant violated a provision of the Motor Vehicle Code, and that this violation was a cause of the victim's death. ***Commonwealth v. Cheatham***, 615 A.2d 802, 804-05 (Pa. Super. 1992). Causation occurs when the Motor Vehicle Code violation is a direct and substantial factor in the victim's death, and the fatal result is not extraordinary or remote. ***Commonwealth v. Rementer***, 598 A.2d 1300, 1306 (Pa. Super. 1991).

Further, and of significance, the defendant's conduct must either be reckless or grossly negligent. A person acts "recklessly" with respect to a material element of an offense

> when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3). Gross negligence is not the equivalent of criminal negligence set forth in 18 Pa.C.S.A. § 302(b)(4). Instead, "the concept of gross negligence is encompassed within the concept of recklessness set forth in Section 302(b)(3)." ***Commonwealth v. Matroni***, 923 A.2d 444, 448 (Pa. Super. 2007). Thus, recklessness "implicates knowledge in two ways: (1) the actor must consciously (*i.e.*, with knowledge) disregard a substantial and unjustifiable risk; and (2) the risk that the actor disregards is measured by the circumstances known to the actor." ***Commonwealth v. Sittler***, 144 A.3d 156, 164 (Pa. Super. 2016). "Conscious disregard" of a risk, in turn, "involves first becoming aware of the risk and then choosing to proceed in spite of the risk." ***Commonwealth v. Huggins***, 836 A.2d 862, 865 (Pa. 2003). ***See also Commonwealth v. Vogelsong***, 90 A.3d 717, 719 (Pa. Super. 2014) (recklessness requires conscious action or inaction that creates substantial risk of harm to others, whereas negligence suggests unconscious inadvertence). In other words, to be guilty of reckless driving, a person must be aware that there exists a substantial risk that injury will result from their driving and yet continue to drive in such a manner callously disregarding the risk created by their own reckless driving. ***Commonwealth v. Bullick***, 830 A.2d 998 (Pa. Super. 2003).

As these definitions make clear, homicide by vehicle does not apply to most vehicle fatalities, tragic though they all are. To lose sight of this truth is to risk "blur[ring] the lines of criminal liability based upon negligence, ordinary

recklessness and the form of recklessness encompassed in malice, that reflects extreme indifference to the value of human life." ***Commonwealth v. Moyer***, 171 A.3d 849, 854 (Pa. Super. 2017).

In the present case, the evidence, viewed in the light most favorable to the Commonwealth, satisfies the first element of homicide by vehicle, violation of a provision of the Vehicle Code. The record establishes that Appellant violated multiple Vehicle Code provisions: failure to yield the right of way, improper turning movement and two subsections of the careless driving statute.

Section 3112, relating to traffic-control signals, provides in relevant part:

> Vehicular traffic facing a green arrow signal, shown alone or in combination with another indication, may enter the intersection only to make the movement indicated by the arrow, or such other movement as is permitted by other indications shown at the same time. Such vehicular traffic shall yield the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection.

75 Pa.C.S.A. § 3112(a)(1)(ii). Here, at the time of the collision, the victim was crossing the street in a lawfully designated crosswalk. As Appellant made a left-hand turn onto the street the victim was crossing, she was required to yield the right-of-way to the victim. She failed to do so. She thus violated Section 3112(a)(1)(ii).

The improper movement statute provides in relevant part: "Upon a roadway no person shall turn a vehicle or move from one traffic lane to another . . . unless and until the movement can be made with reasonable safety nor

without giving an appropriate signal in the manner provided in this section."
75 Pa.C.S.A. § 3334(a). Appellant failed to turn her vehicle with reasonable safety by making a left-hand turn without yielding to the victim in the adjacent crosswalk, thus committing a second violation of the Vehicle Code.

The careless driving statute provides in relevant part:

**(a) General rule.**--Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.

**(b) Unintentional death.**--If the person who violates this section unintentionally causes the death of another person as a result of the violation, the person shall, upon conviction, be sentenced to pay a fine of $500.

75 Pa.C.S.A. § 3714. "The *mens rea* requirement applicable to Section 3714, careless disregard, implies less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances." ***Commonwealth v. Gezovich***, 7 A.3d 300, 301 (Pa. Super. 2010) (internal quotations and citations omitted).

The evidence satisfies Section 3714(a) and (b). Appellant had an unobstructed view of the intersection for at least 45 seconds before beginning to turn her vehicle. Nevertheless, she failed to notice the victim because she was preoccupied with reading paperwork while stopped at a red light. By striking and killing the victim, she drove her vehicle in careless disregard for the victim's safety and, in so doing, unintentionally caused the victim's death.

The second element of homicide by vehicle requires proof that the Vehicle Code violation caused the victim's death. The evidence demonstrates

a direct and substantial nexus between Appellant's traffic violations and the fatal collision an instant later. Thus, the causation element is satisfied.

The third element of homicide by vehicle requires proof that the defendant acted recklessly or with gross negligence. It is here that the Commonwealth's case fails for lack of sufficiency, for while the evidence establishes Appellant's guilt for careless driving, it falls short of demonstrating recklessness or gross negligence. ***The evidence simply does not support a finding that Appellant was conscious that her driving created a substantial and unjustifiable risk that would cause injury, but that she nonetheless proceeded to drive in a reckless manner causing the victim's death***.

On the day of the fatal accident, Appellant was not driving her usual route. Fearing she would be terminated if she went off-route, Appellant picked up and looked at papers to ascertain her designated route as she was stopped at the traffic light. Her lack of attentiveness caused her to overshoot the stop bar and come to rest in the crosswalk. Officer Morrissey, the investigating officer and crash reconstruction expert, opined that by stopping over the white stop line in the crosswalk, Appellant may not have been able to see the victim on the diagonal corner waiting to cross. While Appellant claimed not to have seen the victim until after she hit him, she had ample opportunity to observe him while stopped for 45 seconds at the intersection. The bus's surveillance video demonstrates that from Appellant's vantage point, the victim was visible

on the opposite corner and no other pedestrians or traffic would have obstructed her view. When the light turned green, SEPTA regulations required Appellant to check for pedestrians and scan the intersection for four seconds before making the left turn. She waited only 2.33 seconds before turning. While turning, she violated SEPTA regulations by not gripping the steering wheel with both hands. She rested the palm of one hand on the wheel instead of gripping it, while still holding the route paperwork in her other hand. When struck, the victim was in the crosswalk for approximately 6.75 seconds and approximately 32 feet across the intersection. At impact, Appellant was traveling approximately 8 miles per hour. Officer Morrissey testified that no mechanical defects or failures caused the collision. He also excluded speed, weather, roadway conditions, glare and obstruction of vision as possible contributors to the crash. The victim was legally within the crosswalk and remained clearly visible as Appellant made the turn. It was Appellant's testimony that when the light turned green, she looked left, forward and right before moving to make sure there was no oncoming traffic. She simply did not see the victim at any point prior to moving.

We hold, as a matter of law, that this case constitutes careless driving but not recklessness or gross negligence. Absent from the proof in this case

is any evidence that Appellant was consciously aware of a substantial and unjustifiable risk created by her conduct that would cause injury to the victim.[2]

Appellant stopped the bus (albeit past the stop bar) and remained stationary for little more than two seconds after the traffic light turned green before proceeding into the intersection, too short a time under SEPTA regulations, but not a conscious disregard of a substantial and unjustifiable risk. Had Appellant's bus barreled through the red light without stopping and collided with the victim, this would have been a conscious disregard of a substantial and unjustifiable risk, the essence of recklessness or gross negligence. *See Moyer*, 171 A.3d at 854 (evidence demonstrated conscious disregard of substantial and unjustified risk of fatal accident in prosecution for homicide by vehicle, where defendant drove past stop sign going 12 miles per hour, stop sign preceded busy street, building obscured view of one lane of cross traffic, defendant was familiar with intersection, so she knew it was busy street with obscured view). It is simply out of proportion to classify this relatively minor infraction (waiting 2.33 seconds as opposed to 4 seconds) as recklessness or gross negligence.

---

[2] Among the reasons given by the trial court finding Appellant guilty of homicide by vehicle, was its conclusion that she grossly deviated from the standard of care for a similarly-situated bus driver, a conclusion also reached by the Dissent. Dissenting Op. at 4. We find that we need not address the standard of care for a professional bus driver under the facts of this case, since we have concluded there was no evidence Appellant was consciously aware of a substantial and unjustifiable risk created by her conduct that would have caused injury to the victim.

The Commonwealth also notes that Appellant should have seen the victim during the 45 seconds that the bus was stopped at the red light, but Appellant failed to notice him because she was reading documents. It might be reckless or grossly negligent for a driver to read while her vehicle is in motion, but not when, as here, Appellant was stopped at a red light. Taken to its logical extreme, the Commonwealth's position would characterize any activity while stopped in traffic, such as checking one's GPS, as reckless or grossly negligent conduct.

The Commonwealth further observes that when the bus moved, Appellant clutched the documents with one hand and rested the palm of her other hand on the steering wheel, violating SEPTA regulations to keep both hands on the wheel. Once again, while Appellant violated SEPTA rules, these acts did not constitute conscious disregard of a substantial and unjustifiable risk. Moreover, there is no suggestion that turning the steering wheel with one hand caused loss of control over the bus or the accident itself.

Had the collision occurred because Appellant was speeding, tailgating, erratically changing lanes, crossing double yellow lines, or racing another vehicle, we would have no objection to a verdict of recklessness or gross negligence. **See Commonwealth v. Matroni**, 923 A.2d 444, 448 (Pa. Super. 2007) (defendant was speeding, tailgating and erratically changing lanes); **Commonwealth v. Grimes**, 842 A.2d 432, 433 (Pa. Super. 2004) (crossing center line into victim's lane and striking victim's car); **Commonwealth v.**

*Bowser*, 624 A.2d 125, 129 (Pa. Super. 1993) (crossing double yellow lines); *Commonwealth v. Jackson*, 744 A.2d 271, 274 (Pa. Super. 1999) (high speed race with another vehicle). Appellant's misconduct simply was not as egregious. She did not engage in any of these reckless acts. Although she did not step on her brakes until after the collision, this was simply because she did not see the victim. The circumstances of this case do not suggest the level of brazenness or hard-heartedness characteristic of acts of recklessness. The evidence in this case simply does not support a finding that there was a conscious disregard of a risk to establish recklessness, as opposed to a simple lack of awareness of the risk that would suffice to establish criminal negligence. *See Commonwealth v. Heck*, 491 A.2d 212 (Pa. Super. 1985) (while both criminal negligence and recklessness involve "gross" deviations from reasonable conduct, recklessness includes conscious disregard of a risk whereas criminal negligence is accompanied by a lack of awareness of the risk).

We also find that our holding in *Commonwealth v. Gilliland*, 422 A.2d 206 (Pa. Super. 1980), supports the conclusion we reach in this case. In *Gilliland* the defendant was found guilty of involuntary manslaughter and recklessly endangering another person as a result of a boating accident. The accident occurred at night while the defendant and his family were boating on a lake. Due to impending darkness, defendant proceeded on the lake at approximately 20 to 25 miles per hour. His boat was closely observed at a

- 13 -

substantial distance by the decedent, McGill, who, with his family, also was boating on the lake. The two boats collided. A few moments before impact, occupants on McGill's boat screamed to steer away from the defendant's oncoming boat. The decedent, McGill, did not blow his horn or move out of the path of the defendant's boat. Immediately prior to impact, both the defendant and decedent steered their boats to the right. A collision occurred at which time the defendant's boat went over McGill's boat fatally injuring McGill. Significantly, the defendant stated that he did not see McGill's boat in a sufficient amount of time to prevent the collision. We concluded that this evidence was insufficient to rise to the level of gross negligence necessary to sustain a criminal conviction. The defendant simply failed to see the boat that the decedent was operating. There was no conscious realization of a substantial risk that was subsequently disregarded. Rather, there only was a general lack of awareness of the situation on the part of the defendant. Instantly, there is no evidence in the record before us to demonstrate that Appellant consciously was aware of a substantial risk that she disregarded. To the contrary, Appellant simply did not see the victim, thus evidencing only a general lack of awareness of the situation.

The Dissent, while forcefully stated, does not convince us that Appellant acted recklessly. The Dissent argues that Appellant was well aware of the significant risk she could have hit a pedestrian while driving a bus, especially a tandem bus, and was "fully aware of a safety rule," a SEPTA regulation,

"requiring her to stop and look for a full four seconds before making a left turn." Dissenting Op. at 1-2. This rationale is too generalized to support criminal liability under the homicide by vehicle statute. **Every** driver knows that there is a risk of hitting a pedestrian while driving a vehicle and knows that she must look carefully before turning into an intersection to reduce the risk of striking a pedestrian, yet failure to follow these principles does not automatically constitute homicide by vehicle. Our precedents make clear that this crime requires something more egregious. Prosecuting drivers simply for failing to guard against the risks identified by the Dissent would transform every fatal accident into a homicide by vehicle case, thus "blur[ring] the lines of criminal liability based upon negligence, ordinary recklessness and the form of recklessness encompassed in malice, that reflects extreme indifference to the value of human life." **Moyer**, 171 A.3d at 854.

Singly or in combination, and without minimizing the seriousness of Appellant's actions, her errors do not satisfy the element of recklessness or gross negligence. We reach this decision solely by evaluating the sufficiency of the evidence in relation to the homicide by vehicle statute and relevant appellate decisions. We agree with the trial court's verdict of careless driving. At the same time, however, we recognize that the legislature has erected a firm boundary between careless driving and the reckless or grossly negligent conduct required for homicide by vehicle. Appellant did not cross this line.

Because we reverse Appellant's conviction for homicide by vehicle, we remand for resentencing on all remaining convictions to give the trial court the opportunity to restructure its entire sentencing scheme. ***Commonwealth v. Goldhammer***, 517 A.2d 1280, 1283–84 (Pa. 1986); ***Commonwealth v. Williams***, 871 A.2d 254, 266 (Pa. Super. 2005) (if trial court errs in its sentence on one count in a multi-count case, all sentences for all counts will be vacated so court can restructure its entire sentencing scheme).

Judgment of sentence on homicide by vehicle reversed. Case remanded for resentencing on all remaining convictions. Jurisdiction relinquished.

Judge Bowes files a concurring opinion in which Judge Stabile concurs in the result.

Judge McLaughlin files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/3/20