J-S07015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHYHEEMA D. MORRIS-CARR | : | |
| | : | |
| Appellant | : | No. 532 EDA 2019 |

Appeal from the Judgment of Sentence Entered January 31, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006995-2017

BEFORE: NICHOLS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:            **FILED JUNE 03, 2020**

Appellant Shyheema D. Morris-Carr appeals from the judgment of sentence following a bench trial and convictions for aggravated assault of a victim less than thirteen years old, endangering welfare of a child, simple assault, and recklessly endangering another person.[1]  Appellant only challenges the sufficiency of the evidence for her aggravated assault conviction under 18 Pa.C.S. § 2702(a)(9), specifically, whether she acted recklessly.  We affirm.

We state the facts as set forth by the trial court:

At around 5:30 or 6 p.m. on Tuesday, May 23, 2017, Teresa House dropped her twenty-month-old daughter, S.B., off at 553 East Rittenhouse Street in Philadelphia.  There, [Appellant] watched

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(9), 4304(a)(1), 2701(a), and 2705, respectively.

S.B. overnight. [Appellant's] boyfriend lived at this house, and [Appellant] stayed there with him several nights each week.

On the afternoon of May 24, 2017, [Appellant] texted Ms. House six times, requesting that she call [Appellant] as soon as possible, and she informed [Appellant] that her daughter had been burned. [Appellant] initially told Ms. House an implausible story about how her daughter received the burns, and this story was largely consistent with her initial interview with Detective McGoldrick of the Special Victims Unit (SVU). Ms. House then travelled from New Jersey via public transit for several hours, arriving at 553 Rittenhouse around 6 p.m. She immediately noticed that S.B.'s feet were swollen, and when she pulled off S.B.'s socks, she saw severe burns on her feet.

Ms. House initially brought S.B. to Chestnut Hill Hospital, and S.B. was subsequently transferred to St. Christopher's Hospital for Children. There, medical personnel determined that S.B. had partial thickness burns (a.k.a second-degree burns) to her feet and ankles, covering approximately six percent of the entire surface of her body. S.B. spent one month in the hospital recovering from the burns and a related infection.

The facts presented in this case were otherwise contested. The Commonwealth mainly argued, through Dr. Marita Lind's expert testimony, that [Appellant] intentionally caused [S.B.'s] burns through willful child abuse. [Appellant] admitted that she initially lied to Ms. House and Detective McGoldrick in a second voluntary SVU interview with Detective Kahn, and [Appellant] argued at trial that the events she narrated in the subsequent interview were truthful and that they prove that her actions were negligent, not reckless.

During her second SVU interview, [Appellant] stated that in the afternoon on May 24, 2017, she gave S.B. a bath in the second floor bathroom. She put S.B. in the bathtub and then ran the water. While the water was running, she left S.B. sitting on her butt with her feet in the water. [Appellant] claimed that when she felt the water, it was warm. She left the bathroom while the water was about halfway up S.B.'s legs. [Appellant] walked out of the bathroom while the water was still running, and went downstairs. "I was playing on my phone," she stated in her interview. "I guess eventually, I end[ed] up . . . hearing [S.B.] scream. So I'm like, 'Oh, snap. The water's still on.' So I ran[] upstairs, and the water

was up right here [gesturing to her hip line, around where her navel is]." When [Appellant] felt the water, it was hot, so she removed S.B. from the bathtub. She didn't notice the "marks on her feet" until after she dried S.B. off and saw her sit down on the hallway floor. She then observed that S.B.'s skin was peeling off and bubbling.

[The trial court] determined that, based on her own admissions at trial, [Appellant] acted recklessly by leaving a twenty-month-old child in running bathwater that everyone in the house knew to be hot,[fn3] walking downstairs, and playing on her phone until she heard the child screaming.

> [fn3] In [Appellant's] second videotaped interview with the SVU, [Appellant] stated that "[e]verybody knows that the water's too hot . . . . [T]he maintenance told [Appellant's boyfriend], 'You got to turn it down, because the water gets real hot.' The downstairs water gets real hot."

Trial Ct. Op., 6/14/19, at 1-4 (citations and some footnotes omitted). We note that the trial court based some of its facts on Commonwealth's Exhibit 11, which was not transmitted to this Court as part of the certified record.[2]

We add that a police officer testified that after turning on the water, he measured the water temperature as between 73.36 and 80 degrees, and after two minutes, the water measured around 110 degrees. N.T. Trial, 11/5/18, at 104-05. The parties also stipulated that on June 19, 2017, a social worker visited Appellant's home, "observed the bathtub and let the water run for sixty seconds on its highest temperature. The water became very hot and he was

_____

[2] Appellant does not contend the trial court's recitation of the facts is inaccurate. We remind the parties of their duty to ensure the complete record is transmitted to this Court. **See generally** Pa.R.A.P. 1921.

unable to leave his hand under the water. He observed the hot water heater in the home[, which] was set on the fourth highest" setting out of six settings. *Id.* at 125.

On November 5, 2018, following a bench trial, the trial court found Appellant guilty of the above charges, and ordered a presentence investigation and mental health evaluation. N.T. Hr'g, 1/11/19, at 8; N.T. Trial, 11/5/18, at 131-32. The trial court subsequently sentenced Appellant to eleven-and-a-half to twenty-three months' incarceration. N.T. Sentencing Hr'g, 1/31/19, at 30. Appellant did not file a post-trial motion but timely appealed.

On February 28, 2019, the trial court ordered Appellant to comply with Pa.R.A.P. 1925(b). After receiving an extension of time, Appellant filed a Rule 1925(b) statement on April 4, 2019, challenging the sufficiency of evidence for whether she intentionally, knowingly, or recklessly caused serious bodily injury. The trial court prepared a Rule 1925(a) opinion.[3]

Appellant raises the following issue:

> Was not the evidence insufficient to sustain [A]ppellant's conviction for aggravated assault, 18 Pa.C.S. § 2702(a)(9), where the evidence failed to establish that [A]ppellant recklessly caused serious bodily injury to the [victim]?

Appellant's Brief at 3 (some formatting altered).[4]

_____

[3] We summarize the trial court's Rule 1925(a) opinion below.

[4] "Appellant does not dispute that S.B. suffered serious bodily injury or that the evidence was []sufficient to establish the age elements of the crime." Appellant's Brief at 9 n.3.

- 4 -

In ***Commonwealth v. Soto***, 202 A.3d 80 (Pa. Super. 2018), *appeal denied*, 207 A.3d 291 (Pa. 2019), this Court set forth our standard of review:

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the jury to find every element of a crime beyond a reasonable doubt.
>
> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Soto***, 202 A.3d at 93 (citation and quotation marks omitted).

Appellant argues that although she "acted recklessly, her recklessness did not reach the heightened level of recklessness," as defined under 18 Pa.C.S. § 302(b)(3). Appellant's Brief at 10. Appellant asserts "that a heightened degree of recklessness, akin to malice in a homicide case, is required for aggravated assault convictions[.]" ***Id.*** at 10-11 (quoting ***Commonwealth v. Smith***, 956 A.2d 1029, 1036-37 (Pa. Super. 2008)). In Appellant's view, this "standard of recklessness requires a high degree of culpability [*i.e.,* an] element of deliberation or conscious disregard," which "is

- 5 -

not the same as the *mens rea* recklessness element" in REAP. ***Id.*** at 11 (citing ***Commonwealth v. O'Hanlon***, 653 A.2d 616, 618 (Pa. 1995)). In support, Appellant points out that our "Supreme Court has distinguished the recklessness that is malice and mere recklessness of the kind that occurred" here. ***Id.*** "Mere or 'ordinary recklessness,'" Appellant contends, "is insufficient to establish malice." ***Id.*** (citing ***Commonwealth v. Hoffman***, 198 A.3d 1112, 1119 (Pa. 2018)).

Appellant notes the *mens rea* for REAP, *i.e.*, "a conscious disregard of a known risk of death or great bodily harm to another person." ***Id.*** at 11-12 (citing ***Commonwealth v. Martuscelli***, 54 A.3d 940 (Pa. Super. 2012)). Appellant states that by leaving S.B. "unattended in a bathtub," she "satisfied the *mens rea* element of reckless endangerment." ***Id.*** at 12. "But the evidence did not support a finding of malice as required for aggravated assault," Appellant insists. ***Id.*** Appellant argues that although she "initially gave an implausible account to the police," ***see*** Trial Ct. Op. at 3, the record did not establish "malice, that is recklessness 'under circumstances manifesting extreme indifference to the value of human life,'" as to support an aggravated assault conviction. ***Id.*** (quoting ***O'Hanlon***, 653 A.2d at 617).

Appellant then argues that the non-Pennsylvania cases cited by the trial court in its Rule 1925(a) opinion, which is summarized below, are distinguishable. ***See id.*** at 12-14. Appellant asserts that based on Pennsylvania's definition of recklessness, the evidence was insufficient to

establish that she "engaged in the increased degree of recklessness under circumstances manifesting an extreme indifference to the value of human life . . . ."[5] *Id.* at 15. Therefore, Appellant concludes, this Court should vacate her aggravated assault conviction under subsection (a)(9) and remand for resentencing on the remaining convictions. *Id.*

In response, the Commonwealth counters that the record established the *mens rea* requirement for aggravated assault. Commonwealth's Brief at 8. Further, the Commonwealth contends that legally sufficient *mens rea* was established for the conviction by the following evidence:

> The possibility of seriously hurting S.B. by leaving her unattended in a bathtub with water that "gets real hot" was readily apparent. [Appellant] told police that she knew the water gets too hot, so she clearly was aware that the water was a source of possible injury to S.B. Even if that weren't the case, nothing more than common sense is needed to know that leaving a young toddler alone in a bathtub of water creates an extremely high risk of the child dying by drowning.
>
> Furthermore, [Appellant] did not give any explanation that would justify her leaving S.B. alone in the tub of running water. She did not give police any reason why she initially went downstairs while S.B. was still in the bath, nor why she was downstairs "playing" on her phone until she heard S.B. screaming. Her response to S.B.'s visibly severe injuries—burns with her skin peeling off and bubbling—were wholly inadequate. She only put Vaseline on the wounds and made no effort to take S.B. to a hospital or otherwise seek medical advice. She instead chose to wait hours for Ms.

---

[5] As we discuss below, that phrase exists only in subsection (a)(1) aggravated assault, and Appellant was convicted of subsection (a)(9) aggravated assault, which lacks that phrase.

House to travel from New Jersey to pick up S.B. and get her medical care.

*Id.* at 9 (footnote omitted). The Commonwealth did not discuss the non-Pennsylvania case law cited by the trial court.[6]

In its opinion, the trial court held that Appellant "consciously disregarded a substantial and unjustifiable risk that S.B. would be burned—or worse—when she left her alone in running bathwater." Trial Ct. Op. at 7. The trial court claimed that although it "did not find any factually analogous binding precedent," the court discussed four non-Pennsylvania cases that "have persuasively reasoned that leaving a child unsupervised in bathwater is reckless." *Id.* (discussing ***Commonwealth v. Chapman***, 744 N.E.2d 14 (Mass. 2001), ***State v. Brooks***, 17 So.3d 1261 (Fla. Dist. Ct. App. 2009), ***State v. Botelho***, 83 A.3d 814 (N.H. 2013), and ***People v. White***, 2009 WL 3466003 (Mich. Ct. App. Oct. 27, 2009) (*per curiam*) (unpublished op.)). Based on those non-Pennsylvania cases, the trial court advanced four reasons for why Appellant's "actions were a gross deviation from the standard of

_____

[6] We note that the Commonwealth, like Appellant, also cited to caselaw interpreting subsection (a)(1). **See** Commonwealth's Brief at 8 (citing to ***Commonwealth v. Packer***, 168 A.3d 161 (Pa. 2017), ***Commonwealth v. Smith***, 956 A.2d 1029 (Pa. Super. 2008) (*en banc*), and ***Commonwealth v. Kling***, 731 A.2d 145 (Pa. Super. 1999)). In ***Packer***, ***Smith***, and ***Kling***, each defendant was convicted of subsection (a)(1) aggravated assault. **See** ***Packer***, 168 A.3d at 163 n.2; ***Smith***, 956 A.2d at 1036; ***Kling***, 731 A.2d at 147.

conduct that a reasonable person would follow in her situation." Trial Ct. Op. at 8. According to the trial court, first, Appellant "left the child alone in running bathwater," second, Appellant "knew that the bathwater could run very hot in that particular home," third, Appellant left the bathroom and went downstairs to play on her phone, and fourth, Appellant's "response to [S.B.'s] injuries [was] inadequate . . . ." *Id.*[7]

We state the following as background for Appellant's claim that the aggravated assault statute specifies a heightened standard of recklessness, which applies to her conviction under subsection (a)(9). Section 2702(a) of the Crimes Code defines aggravated assault as follows:

**(a) Offense defined.—**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or **recklessly under circumstances manifesting extreme indifference to the value of human life** [and]

\* \* \*

---

[7] The trial court noted that at trial, "the Commonwealth argued that [Appellant's] behavior was intentionally [sic] abuse conduct" but that the trial court "did not reach that finding, due to [Appellant's] own admission of facts that amounted to criminally reckless conduct." Trial Ct. Op. at 6. The trial court and Commonwealth are referring to Dr. Lind's expert testimony, as summarized in our quotation from the trial court's opinion above. Dr. Lind had testified that S.B.'s injuries were consistent with intentional child abuse, *i.e.*, S.B. was restrained in the bathtub. *Id.* at 3; N.T. Trial at 55-57 (discussing the burns had a "clear line of demarcation" consistent with being held down).

(9) attempts to cause or intentionally, knowingly or **recklessly** causes serious bodily injury to a child less than 13 years of age, by a person 18 years of age or older.

18 Pa.C.S. § 2702(a)(1), (a)(9) (emphases added).[8]

The Crimes Code defines "recklessly" as follows:

(3) A person acts recklessly with respect to a material element of an offense when he **consciously disregards** a substantial and unjustifiable risk that the material element exists or **will result from his conduct**. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3) (emphases added).

In **Commonwealth v. Nichols**, 692 A.2d 181 (Pa. Super. 1997), the Court explained "the phrase 'under circumstances manifesting extreme indifference to the value of human life' modifies 'recklessly' such that reckless conduct **not** circumstantially manifesting such indifference will not support an aggravated assault conviction under this subsection[, *i.e.*, subsection (a)(1)]." **Nichols**, 692 A.2d at 186 (emphasis added); **see also id.** at 186 n.5 (stating the "recklessness defined in 18 Pa.C.S. § 302(b)(3) does **not** establish the malice required to convict under 18 Pa.C.S. § 2702(a)(1)." (emphasis added and citations omitted)). In other words, instructing the jury on "recklessness only in accordance with Section 302(b)(3)" "requires reversal [of subsection

---

[8] The aggravated assault statute was amended effective January 1, 2014, to include subsection (a)(9).

(a)(1) aggravated assault conviction] when a trial court fails to include the critical language 'recklessly under circumstances manifesting extreme indifference to the value of human life.'" **Commonwealth v. Myers**, 722 A.2d 1074, 1078 (Pa. Super. 1998) (explaining **Nichols** holding).

Our research has identified no relevant **reported** cases addressing aggravated assault convictions under subsection (a)(9), which uses the term "recklessly" without the qualifier "under circumstances manifesting extreme indifference to the value of human life."[9] **Compare** 18 Pa.C.S. § 2702(a)(9), **with** 18 Pa.C.S. § 2702(a)(1). Nevertheless, the rules of statutory construction support a conclusion that the heightened standard of recklessness applicable to aggravated subsection (a)(1) does **not** apply to subsection (a)(9). **See** 1 Pa.C.S. § 1921(a)-(b); **Commonwealth v. Berryman**, 649 A.2d 961, 965 (Pa. Super. 1994) (noting that "[w]here a

_____

[9] We note, however, that a party may cite to non-precedential cases for their persuasive value to the extent those cases were filed after May 1, 2019. **See** Pa.R.A.P. 126(a)-(b). In **Commonwealth v. Thomas**, 1668 WDA 2018, 2019 WL 6682194 (Pa. Super. filed Dec. 6, 2019) (unpublished mem.), a non-precedential case, the defendant was convicted of subsection (a)(9) aggravated assault and argued on appeal that the Commonwealth failed to establish that he acted recklessly. **Thomas**, 2019 WL 6682194 at *2. The **Thomas** Court quoted Section 302(b)(3), and recited the evidence of record that established that the defendant "should have known that he could cause serious bodily injury by throwing a nine-year-old child across a room." **Id.** at *3. The **Thomas** Court noted that such evidence included the victim's testimony of the defendant's assault and the size disparity between the defendant, an adult male, and the nine-year old victim. **Id.**

legislature includes specific language in one section of a statute and excludes it from another, that language should not be implied where excluded." (citation omitted)).

Moreover, our Courts, however, have construed "recklessly" in addressing other crimes and offenses that rely on the Section 302(b)(3) definition of "recklessly." For example, in *In re T.G.*, 208 A.3d 487 (Pa. Super. 2019), this Court construed the statutory definition of "child abuse"[10] in determining whether the trial court erred. *In re T.G.*, 208 A.3d at 490. The *T.G.* Court noted that the relevant statutory chapter referenced the definitions set forth in the Crimes Code, including 18 Pa.C.S. § 302(b)(3). *Id.* at 491.

The *T.G.* Court considered whether the trial court erred "by ignoring uncontroverted evidence of [the mother's] reckless serious physical neglect" of the victim, who was born with numerous "health conditions . . . ." *Id.* at 488, 492. We do not summarize the extensive facts in *T.G.*, but based on the record, the *T.G.* Court held that the victim's neglect was "the direct result of [the defendant's] conscious disregard of the substantial and unjustifiable risk that her neglect of [the victim's] essential needs would impair [the victim's] health and development." *Id.* at 496. The *T.G.* Court held that the

_____

[10] Specifically, the "term 'child abuse' shall mean intentionally, knowingly or recklessly . . . [c]ausing serious physical neglect of a child." *In re T.G.*, 208 A.3d at 490-91 (quoting 23 Pa.C.S. § 6303).

defendant's disregard "evinces a 'gross deviation from the standard of conduct that a reasonable person would observe in [her] situation.'" *Id.* at 495 (quoting 18 Pa.C.S. § 302(b)(3)).

In ***Commonwealth v. Moyer***, 171 A.3d 849 (Pa. Super. 2017), the inebriated defendant ran a stop sign, which resulted in a car accident causing death. ***Moyer***, 171 A.3d at 851. The defendant was convicted of homicide by vehicle, which is defined as "[a]ny person who recklessly or with gross negligence" kills another person while driving a vehicle. *Id.* at 852.[11] The ***Moyer*** Court noted "recklessly" was defined as set forth above in Section 302(b)(3), and "gross negligence is encompassed within the concept of recklessness as set forth in § 302(b)(3)." *Id.* at 852 (some formatting altered). Therefore, the ***Moyer*** Court noted, "we have upheld convictions where the defendant's conduct 'evidenced a conscious disregard of the substantial and unjustified risk that he would be involved in a traffic accident causing death.'" *Id.*

The ***Moyer*** Court reiterated the factual record, which established among other things, that the defendant slowed her vehicle from 25 miles per hour to 12 miles per hour after the stop sign and she knew a building obscured the view of oncoming traffic. *Id.* at 854. As a result, the ***Moyer*** Court held that

---

[11] For our discussion, we simplified the homicide-by-vehicle statutory definition. ***See*** 75 Pa.C.S. § 3732(a).

- 13 -

that the defendant exhibited a "conscious disregard of the substantial and unjustified risk that [s]he would be involved in a traffic accident causing death." *Id.*

The *Moyer* defendant also challenged whether she acted recklessly, citing *O'Hanlon* (which the instant Appellant cited above), and *Commonwealth v. McHale*, 858 A.2d 1209 (Pa. Super. 2004). *Moyer*, 171 A.3d at 853. The *Moyer* Court pointed out that both cases involved a sufficiency challenge to a conviction for Section 2702(a)(1) aggravated assault, which requires a *mens rea* of recklessness "under circumstances manifesting extreme indifference to the value of human life," *i.e.*, malice. *Id.*

> [T]he *mens rea* for [section 2702(a)(1)] aggravated assault is recklessness "under circumstances manifesting extreme indifference to the value of human life." Thus, "the offensive act must be performed under circumstances which almost assure that injury or death will ensue." . . .
>
> [R]ecklessness manifesting extreme indifference to human life is malice. Malice, in turn, is "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured."

*Id.* (citations omitted and some formatting altered). The *Moyer* Court rejected the defendant's reliance on *O'Hanlon* and *McHale*, as Section 2702(a)(1) aggravated assault has a different *mens rea* requirement than mere recklessness, *i.e.*, "malice [was] not at issue." *Id.* at 853-54.

In sum, our review compels us to conclude that in the context of subsection (a)(9) aggravated assault, a person is guilty of aggravated assault

if she recklessly, *i.e.*, "consciously disregards a substantial and unjustifiable risk" that "serious bodily injury to a child less than 13 years of age" "will result from [her] conduct." 18 Pa.C.S. §§ 302(b)(3), 2702(a)(9). Accordingly, Appellant's argument that the heightened standard of recklessness under subsection (a)(1) of the aggravated assault statute applies to subsection (a)(9) fails.

Turning to the merits of the present case, we conclude that the Commonwealth proved the lesser degree of recklessness, *i.e.*, conscious disregard of a substantial and unjustifiable risk of "serious bodily injury to a child less than 13 years of age." **See** 18 Pa.C.S. §§ 302(b)(3), 2702(a)(9). As noted above, Appellant argues that the record "failed to establish [she] recklessly caused serious bodily injury" to S.B. by leaving S.B. in a bathtub while hot water was running. Appellant's Brief at 9. The record, however, established Appellant's awareness that "everybody" knew the water was "too hot" and got "real hot." Trial Ct. Op. at 4 n.3.[12] The record also established that after sixty seconds, the water was physically unbearable and after two minutes, the bath water measured around 110 degrees. **See** N.T. Trial at 104-05, 125. Although Appellant was aware the water was "too hot," she

---

[12] As stated above, the trial court quoted from Commonwealth's Exhibit 11, which was not transmitted as part of the certified record. Appellant did not challenge the trial court's quotation from Exhibit 11. We cannot consider this exhibit because it is not part of the certified record.

nonetheless left the twenty-month old victim alone in the bathtub so she could play on her phone downstairs.  Trial Ct. Op. at 3-4 (citing Commonwealth's Exhibit 11).

S.B.'s injuries, like the victim's injuries in ***T.G.***, were the direct result of Appellant's conscious disregard of the substantial and unjustifiable risk that leaving S.B. would result in injury.  ***See T.G.***, 208 A.3d at 495-96.  A reasonable person would not have left a twenty-month-old infant unattended in a bathtub with running water that was known to be "too hot."  ***See id.*** at 495; ***see also Moyer***, 171 A.3d at 854 (summarizing evidence that the defendant knew about the substantial danger of a traffic accident but consciously disregarded it by her conduct of not stopping and checking for oncoming traffic).  Viewing the record in the light most favorable to the Commonwealth as the verdict-winner, we conclude that Appellant "could reasonably anticipate that serious bodily injury" was "the likely and logical consequence" of leaving an infant in a bathtub with "too hot" running water. ***See T.G.***, 208 A.3d at 495, ***Moyer***, 171 A.3d at 854, ***Thomas***, 2019 WL 6682194 at *2.  We therefore reject Appellant's contention that the evidence did not support a finding of malice, ***see*** Appellant's Brief at 12, because malice is not an element of subsection (a)(9) aggravated assault.  ***See*** 18 Pa.C.S. §

2702(a)(9).[13]  Given this record, we need not discuss the non-Pennsylvania cases cited by the trial court or Appellant's argument that such cases are distinguishable because the Commonwealth's evidence established the requisite level of *mens rea* for aggravated assault under Section 2702(a)(9). *See Soto*, 202 A.3d at 93.  For these reasons, we affirm.

Judgment of sentence affirmed.

Judge King joins the memorandum.

Judge Strassburger concurs in the result.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>6/3/2020</u>

---

[13] *Cf. Commonwealth v. Hart*, 501 A.2d 675, 676 (Pa. Super. 1985) (rejecting the defendant's claim that evidence established simple assault and did not establish aggravated assault when the record established the following injuries to the two-year-old victim: "burn marks on his lower abdomen, black and blue bruises on his buttocks and back, a burn scar on his right knee, and a scar over his right eye [and] scars and bruises over his entire body: arms, legs, back and stomach"); *cf. also In re J.S.W.*, 651 A.2d 167, 169 (Pa. Super. 1994) (noting that the defendant pled guilty to aggravated assault after immersing infant in scalding water).