J-S07041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KELI MARIE BRUMLEY | : | |
| | : | |
| Appellant | : | No. 849 WDA 2020 |

Appeal from the PCRA Order Entered July 14, 2020
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000832-2017

BEFORE: SHOGAN, J., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.:            **FILED: APRIL 30, 2021**

Appellant, Keli Marie Brumley, appeals from the order entered in the Fayette County Court of Common Pleas, which denied her first petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

The PCRA court set forth the relevant facts of this case as follows:

> On the evening of February 26, 2017, Trisa Stickles sent a text to Appellant requesting to purchase Xanax from Appellant. After receiving the text, Appellant told the others in her car that she was going to rob Stickles of her money. A meeting was set up and Appellant parked near the scheduled location for the meeting. In the car with Appellant was her boyfriend, Shawn Vaugh; his younger brother, Arsuan Patterson; and Arsuan's girlfriend, Autumn Saluga. Stickles drove her boyfriend, Mapstone, to the location and parked her car in the parking lot of a housing project in Uniontown. Appellant texted Stickles that she was counting the pills and to give Arsuan [Patterson] the money for the drugs. Appellant directed Arsuan [Patterson] to go

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

make the transaction. Arsuan [Patterson] went to the vehicle, sold Mapstone some "lean" but he did not have the requested Xanax pills. Mapstone would not turn over the money to Patterson for the pills until he received them. Patterson returned to Appellant's vehicle, she told him to go and take the money, she did not have any Xanax pills as she had informed Stickles. Patterson was provided his brother's gun and returned to Stickles vehicle. At Stickles' window, Patterson pulled out the gun and pointed it in the window demanding all their money. Mapstone told Stickles to go and the gun was fired into the vehicle. The bullet passed in front of Stickles and hit Mapstone. Stickles drove Mapstone to the hospital where he later died.

(PCRA Court Opinion, filed October 6, 2020, unnumbered at pp. 2-3).

On August 21, 2018, Appellant entered a negotiated plea of *nolo contendere* to third-degree murder, conspiracy to commit robbery, and recklessly endangering another person. The court imposed the negotiated sentence of ten to twenty years' imprisonment. Appellant did not file a direct appeal. On August 19, 2019, Appellant timely filed a counseled first PCRA petition. Appellant subsequently filed an amended PCRA petition on February 3, 2020. The PCRA court held an evidentiary hearing on February 28, 2020. On July 14, 2020, the court denied PCRA relief. Appellant timely filed a notice of appeal on August 10, 2020. On August 20, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied on September 9, 2020.

Appellant raises the following issues for our review:

Did the [PCRA] court abuse its discretion or err as a matter of law when it ignored and failed to address evidence of record that showed ineffective assistance of Appellant's counsel that during the legal timeframe of 10 days after

sentencing Appellant's counsel failed to return Appellant's phone calls and failed to contact her in any way after [being] told by Appellant's family members that Appellant wanted to withdraw her pleas and instead stand trial?

Did the [PCRA] court abuse its discretion or err as a matter of law when it denied Appellant's request to vacate her *nolo contendere* guilty pleas to third-degree murder and order a trial of the felony underlying the second-degree homicide offense of which she was originally charged due to ineffective representation by Appellant's counsel?

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190 (Pa.Super. 2012). Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. **Commonwealth v. Abu-Jamal**, 553 Pa. 485, 720 A.2d 79 (1998), *cert. denied*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999). "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." **Commonwealth v. Johnson**, 600 Pa. 329, 356-357,

966 A.2d 523, 539 (2009).

For purposes of disposition, we combine Appellant's issues. Appellant argues that after she was sentenced, she, her mother and grandmother repeatedly telephoned counsel to discuss withdrawing her plea, but counsel failed to respond. Appellant maintains that because counsel failed to return their phone calls, he was unaware of Appellant's intent to withdraw her plea. Appellant insists the court erred in crediting plea counsel's testimony at the PCRA hearing that he did not receive any messages from Appellant after sentencing. Appellant contends the court ignored counsel's testimony that he did not check his office telephone logs to determine whether he received any phone calls. Appellant avers that counsel's failure to respond to her and her family's messages prejudiced Appellant because it prohibited her from filing a motion to withdraw her plea and/or a direct appeal. Appellant concludes counsel was ineffective and this Court should vacate the order denying PCRA relief, permit Appellant to withdraw her *nolo contendere* plea, and remand for trial. We disagree.

Pennsylvania law presumes counsel has rendered effective assistance. ***Commonwealth v. Williams***, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the

outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Williams, supra*.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit...." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

*Pierce, supra* at 524, 645 A.2d at 194-95 (internal citations omitted).

"Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Sneed*, 616 Pa. 1, 19, 45 A.3d 1096, 1107 (2012).

> A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued.

*Id.* at 19-20, 45 A.3d at 1107 (internal citations and quotation marks

omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [**Kimball, supra**], we held that a criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

**Commonwealth v. Chambers**, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (internal citations and quotation marks omitted). Importantly, boilerplate allegations are insufficient to discharge this affirmative burden to rebut the presumption of effectiveness. **Commonwealth v. Pettus**, 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981) (explaining court will not consider boilerplate claims of ineffective assistance of counsel).

Generally, "[a] defendant wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing." **Commonwealth v. Lincoln**, 72 A.3d 606, 609-10 (Pa.Super. 2013), *appeal denied*, 624 Pa. 688, 87 A.3d 319 (2014) (holding defendant failed to preserve challenge to validity of guilty plea where he did not object during plea colloquy or file post-sentence motion to withdraw plea).

Additionally:

> [P]ost-sentence motions for withdrawal [of a guilty plea] are subject to higher scrutiny [than pre-sentence motions to

withdraw a plea] since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that manifest injustice would result if the court were to deny [her] post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily.

***Commonwealth v. Kehr***, 180 A.3d 754, 756-57 (Pa.Super. 2018) (citation omitted). Further, "in terms of its effect upon a case, a plea of *nolo contendere* is treated the same as a guilty plea." ***Commonwealth v. Lewis***, 791 A.2d 1227, 1230 (Pa.Super. 2002), *appeal denied*, 569 Pa. 717, 806 A.2d 859 (2002) (internal citation omitted).

With respect to counsel's purported failure to file a direct appeal:

Our Supreme Court has held that where "there is an unjustified failure to file a requested direct appeal, the conduct of counsel falls beneath the range of competence demanded of attorneys in criminal cases" and denies the accused the assistance of counsel that is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. Such an oversight constitutes prejudice and *per se* ineffectiveness under the PCRA. However, "[b]efore a court will find ineffectiveness of trial counsel for failing to file a direct appeal, Appellant must prove that [she] requested an appeal and that counsel disregarded this request."

***Commonwealth v. Mojica***, 242 A.3d 949, 955 (Pa.Super. 2020) (internal citations omitted).

Instantly, Appellant testified at the PCRA hearing that she tried to call counsel the day after she entered her plea. Appellant explained the reason for her call as follows:

I just wanted to like discuss everything that happened. It's like, I can't really explain like the experience whenever

- 7 -

> you're, it's like you're here but you're really not here. Do you know what I mean? So I just wanted to call and try to really talk everything over again and understand exactly what, I knew ten to twenty was what I had…. I knew that but I just wanted to discuss everything and talk about everything again because I still didn't really understand.

(N.T. PCRA Hearing, 2/28/20, at 11). On cross-examination Appellant testified that "[a]fter I sat down and thought about the plea that I took I would like to take that back. That's not what I wanted to do. That's not what I wanted to do." (*Id.* at 24). Appellant confirmed that at the time of the hearing she wanted to withdraw her plea. (*Id.* at 25). Appellant also acknowledged that she was "sure" counsel explained her appeal rights, however, she could not recall his explanation specifically. (*Id.* at 10).

Appellant's mother testified at the PCRA hearing that after sentencing she spoke with Appellant, and Appellant informed her that she had been trying to contact counsel. (*Id.* at 30). Appellant's mother testified that following her discussion with Appellant, she made numerous phone calls to counsel on her daughter's behalf and left him several messages. (*Id.*) Further, Appellant's mother explained the reason that she called counsel was simply to ask counsel to go to the prison and see Appellant. (*Id.* at 31). Appellant's grandmother testified at the hearing that she also called counsel, and counsel returned her phone call. (*Id.* at 35). Appellant's grandmother told counsel that Appellant "wanted more explanation and wanted to see him," and they also discussed the location of Appellant's prison transfer and the deplorable conditions at the county jail. (*Id.*)

- 8 -

Plea counsel testified at the hearing that he was completely unaware of any attempt by Appellant or her mother to contact him. (*Id.* at 46). Counsel explained that he only had received phone calls from Appellant's grandmother. Counsel maintained that he never had any request from Appellant or her family for him to file an appeal. (*Id.* at 47). On cross-examination, counsel acknowledged that he did not check the phone logs in his office. (*Id.* at 50).

Under these circumstances, Appellant has failed to establish that she informed counsel of her intent to withdraw her plea. Although Appellant testified that the reason she called counsel the day after sentencing was to "discuss everything," she did not specifically mention that she wanted to withdraw her plea. (*Id.* at 11). Further, none of Appellant's witnesses testified that they informed counsel of Appellant's intent to withdraw her plea. Rather, Appellant's mother and grandmother confirmed that they only contacted counsel to ask him to visit Appellant in prison and explain the circumstances surrounding her plea. (*Id.* at 31). Additionally, plea counsel testified that he did not receive any messages from Appellant or her mother. (*Id.* at 46).

As the PCRA court explained:

> In her Amended PCRA [petition], Appellant asserted that her counsel failed to respond to her requests post trial to call her to discuss withdrawing her sentence and/or to file an appeal in a timely manner. Counsel disputes this statement. He testified that he had no messages from her after the trial. She asserts that her counsel failed to return her calls and failed to return the telephone calls of her mother and grandmother. Appellant admitted that she did not send

counsel any written correspondence informing him of her change of mind. The mother testified that she had left messages for counsel but she did not testify that any of those messages informed him that Appellant wanted to withdraw her plea or have an appeal filed.

Appellant's grandmother did testify she had left a message for Appellant's counsel after the trial and that counsel had returned her telephone message. However, she testified that she spoke to him about Appellant's desire to leave the local prison. There was no discussion with counsel that Appellant wanted to withdraw her plea. Appellant's grandmother, Cathy Brumley, testified that Appellant had only told her that she wished to leave the Fayette County Prison but there was no testimony that Appellant had even informed her grandmother that she wished to withdraw her plea. Counsel for Appellant testified that he did not receive any messages from Appellant post trial. Nor did he receive any message from Appellant's mother. He did receive and returned the telephone call of Appellant's grandmother. He further testified that he was never informed that Appellant wanted to withdraw her plea or wanted an appeal.

Appellant testified that she did not send any correspondence to counsel when he failed to return her telephone calls. Nor did Appellant provide any evidence, such as her telephone records during her incarceration to substantiate her statements that she attempted to contact him.

(PCRA Court Opinion at unnumbered p. 5). The PCRA court credited counsel's testimony (*see id.* at unnumbered p. 6), and we are bound by that determination. *See Johnson, supra*. The court further noted that Appellant's testimony at the PCRA hearing directly and clearly contradicted her prior testimony at the time of her plea. *Id.*

Even if Appellant could establish that counsel ignored calls from Appellant and her family members, Appellant failed to demonstrate prejudice, namely, that the court would have granted a post-sentence motion to

- 10 -

withdraw her plea. Indeed, Appellant fails to even acknowledge the "manifest injustice" standard required to withdraw a plea post-sentencing. **See Kehr, supra**. Likewise, although Appellant claims counsel was ineffective for failing to file a direct appeal, she did not testify at the PCRA hearing that she asked counsel to file an appeal on her behalf. **See Mojica, supra**. For these reasons, Appellant's claims of plea counsel's ineffectiveness fail. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/30/2021